## Baker v. Clark.

(Decided February 6, 1920.)

### Appeal from Fayette Circuit Court.

1. Libel and Slander—When Publication Per Se Libelous.—Where the language is plain and unambiguous as to its meaning and as to the person referred to, it is a question of law as to whether a defamatory publication is per se slanderous or libelous, and because of its greater publicity and being more enduring in form, a publication will be per se libelous when it might not be so if merely spoken.

2. Libel and Slander—When Publication Per se Libelous.—Where the effect of a publication in a newspaper is to subject one to contempt and ridicule, and to charge him with being guilty of unprofessional conduct as an attorney by soliciting clients and representing persons in litigation without authority, such publication is per se libelous.

3. Libel and Slander—Defenses—Qualified Privilege.—The defendant in a libel or slander suit when he would rely in defense upon a qualified privilege must admit that he spoke or published the words, or words of similar import.

4. Libel and Slander—Defenses—Qualified Privilege.—The defendant loses his right to rely on qualified privilege if he knows the publication to be false, or if false he does not bona fide believe its truth, or if he exceeds the privilege or circulates the publication with actual malice against plaintiff.

5. Libel and Slander—When Publication Per Se Libelous.—Where a publication is per se libelous and is false, there can be no privilege where defendant denies the publication. But where under the same circumstances he admits the publication the privilege is available as a defense, provided he acted in good faith without malice and without exceeding the privilege.

6. Libel and Slander—When Publication Per Se Libelous.—When the publication is per se libelous, it is presumed to be made maliciously and with the intention that its language conveys; in such cases it is no defense to deny malice or the intention of which the language is susceptible, and it is error to submit such issues to the jury.

7.  Libel and Slander—Qualified Privilege—Instructions.—Where the restrictions upon the right of qualified privilege are incorporated in an instruction, a converse one must contain the same restrictions.

8.  Libel and Slander—Instructions.—It is error to submit to the jury in an instruction the question of privilege, where the language is plain and unambiguous, since that is a question of law for the court, and especially is this true where the court in other instructions treated the occasion as being a privileged one.

J. W. CAMMACK, J. T. FARMER, J. A. EDGE and BYRD & VAUGHN for appellant.

ALLEN & DUNCAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On October 11, 1915, there appeared in the Lexington Herald, a newspaper published at Lexington, Kentucky, this article:

"AUTHORITY TO USE NAME DENIED BY HUGH MAHIN.

"Keene Man to Withdraw from Receivership Against Burley.

"WILL ACT PROMPTLY.

"Other Stockholders of Company May Join Mahin in Motion.

"Alleging that the use of his name is unwarranted and unauthorized, Hugh Mahin, of Keene, Jessamine county, former representative of his county in the State Legislature, stated his determination last night to take proper steps in court to have his name as plaintiff withdrawn in the receivership suit of J. L. Vallandingham and others against the Burley Tobacco Company. Mr. Mahin will have to support him, he said, other citizens of Keene, who with him will assert that their names as parties to the suit were used unknowingly, among them being Benjamin Wilson, John Wood, James Wood, and perhaps others.

"Mr. Mahin and Mr. Wilson, who stated by long-distance conversation last night that they had only yesterday learned of their interest in the suit, did sign a paper some two months ago asking for a financial statement of the Burley Tobacco Company, of which they were stockholders, but that they did not desire to become parties to any suit against the company which would inconvenience

it and especially which would request a receivership and dissolution of the corporation.

"Their names were obtained to the paper asking for a sight of the company's books by A. M. Baker and L. E. Pearce, Mr. Mahin and Mr. Wilson stated last night, who also said yesterday that the names of James Wood and John Wood had been obtained to a document represented to them to call for only financial statement of the company of which they are stockholders. Mr. Baker, Mr. Pearce and George Sandusky are known to have circulated a petition in the Keene neighborhood a short time before the suit against the Burley Tobacco Company was filed in the Fayette Circuit Court. Mr. Baker and his partner at law, A. A. Bablitz, with a Crittenden county attorney, filed the suit seeking the receivership of the company.

"The men at Keene were informed yesterday by fellow members of the Burley Tobacco Company that they were plaintiffs in the suit requesting a receiver and were indignant at the unwarranted use of their names, they declared. Mr. Mahin, who is a prominent citizen of Jessamine county, asserted his intention of taking proper steps to have his name withdrawn from the suit, and likely will appear in court Wednesday when the Fayette circuit court first convenes, or some time this week. The financial statement which they first sought and which they say they believe themselves to be asking for, since has been made public by the Burley Tobacco Company and published in the public press.

"Attorneys Baker and Bablitz first filed a suit against the Burley Tobacco Company several weeks ago alleging the fraudulent and careless use of the company's money and property and seeking a receivership for the gigantic corporation, representing, according to the petition of J. L. Vallandingham and seven or eight others as plaintiffs, among them the names of Mahin, Wilson and the Wood Brothers.

"Mr. Mahin, while asserting his intention to have his name withdrawn as plaintiff in the suit, did not say he would take any action against the attorneys for the unauthorized use of his name. Mr. Wilson asserted that he did not read the petition, which he signed, closely, but that it was represented to him only to call for a financial statement and not to ask for any receivership. Mr. Mahin

said he read the document closely and that it asked only for the financial statement.

"At the recent annual meeting for the election of officers the Burley Tobacco Company issued a statement of the condition of their books, and refuted the charges preferred in the suit filed by Vallandingham and other prior suits alleging fraud, mismanagement and careless handling of the funds and property of the Burley Tobacco Company."

Alleging that the defendant and appellee, J. D. Clark, willfully, falsely and maliciously printed and published and requested, procured and commanded to be printed and published that article, the appellant and plaintiff below, A. M. Baker, filed this suit against Clark to recover $10,000.00 damages for the libelous publication.

In the petition it is also alleged that the defendant intended to and did falsely and maliciously charge plaintiff, who is a regularly admitted and practicing attorney at the Lexington bar, with the unprofessional conduct of soliciting clients, and with having been guilty of like conduct in bringing a suit without authority of the persons for whom it was brought, and that he was guilty of the common law offense of barratry, and also guilty of such conduct as to subject him to some character of legal action at the hands of the persons whom he pretended to represent.

The petition was afterwards amended in some twenty-six paragraphs, in which it was alleged that defendant, after the publication of the article in the newspaper, procured copies thereof and mailed them separately to twenty-six or more named persons, and that in each of the mailed copies the slanderous article was marked, and plaintiff asked damages in the sum of $5,000.00 for each of those publications.

The answer was a single pleading and responded to the original petition and to the different paragraphs of the amended petition. Answering the original petition it denied the publication or procurement of the publication of the article complained of on October 11, 1915, or at any time, or any intention to charge plaintiff therein with any of the offenses or charges relied on in the petition, or that the article did charge him with being guilty of any such offenses or charges.

The answer to the various paragraphs contained in the amended petition admitted the mailing of the paper

containing the article to each of the persons named, but denied any intention to falsely charge plaintiff with being guilty of any of the offenses alleged to be contained in the article, or that it did charge him with being guilty of any such offenses, and further, that the matters contained in the article were true. In another paragraph the defendant relied on a qualified privilege in defense of the publication of the article by mailing the paper to the various persons named in the amended petition.

A reply made the issues, and upon trial the jury, under instructions from the court, returned a general verdict for the defendant, which was followed by a judgment dismissing the petition, and plaintiff's motion for a new trial having been overruled, he prosecutes this appeal.

We will not undertake to enumerate or discuss all of the grounds relied on for a reversal, but will content ourselves with a consideration of only those errors which we deem material and prejudicial, and from which we have reached the conclusion that a reversal must be ordered.

The first question presented is whether the article is per se libelous. The long recognized legal distinction between defamatory publications which are per se libelous and those which are not is that in the former there is a conclusive presumption of malice and damage, while in the latter the burden is on the plaintiff to prove both malice and damage. It is also true that defamatory matter printed and published may be per se actionable, while the same matter orally published would not be so. 25 Cyc. 250; 17 R. C. L. 263. The foundation for this distinction between oral and printed defamation is that the latter is generally more extensively circulated and is of a more enduring form than the former, which distinction would seem to be one affecting only the extent of plaintiff's damages, and not as furnishing authority for separate classification of the two kinds of publication. Cyc., supra, 251-253. But, however this may be, the distinction is now too well rooted in the law to call it in question.

It is not necessary to a decision of the question presented by this record, nor is it our intention to give a general classification of what defamatory publications are libelous or slanderous per se, since we are concerned only with the particular publication involved. It is sufficient

to say that it is a general rule without exception that "published words, whether written or oral, are actionable if they directly tend to the prejudice or injury of any one in his profession, trade or business;" Cyc., *supra*, 326; 17 R. C. L. 305; Register Newspaper Company v. Worton, 33 Ky. Law Rep. 840, and Axton-Fisher Tobacco Co. v. Evening Post Company, 169 Ky. 65, and this rule as applied to the profession of attorneys at law makes a published article *per se* libelous which charges them with any unprofessional conduct, such as unfaithfulness to clients, or the violation of any of the standard rules of professional ethics, or which "imports a lack of qualities essential to a lawyer in his professional character." Cyc., *supra*, 333; 17 R. C. L. 307; Register Newspaper Company v. Worten, *supra*. In stating this rule the text in R. C. L. says:

"It is well settled that any statement published of an attorney at law with respect to his profession is actionable if it tends to injure or disgrace him as a member of his profession. Any oral or written words which impute to him the want of the requisite qualifications to practice law, or with having been guilty of dishonest or improper practices in the performance of his duties as an attorney are actionable *per se*."

In the Worten case, which was brought by an attorney to recover damages for a defamatory publication which charged him, among other things, with bringing a suit without authority from the plaintiff to do so, the opinion says:

"The law is well settled that a written or printed publication which is false and defamatory, and calculated to expose one to ridicule or contempt, or to render him odious or injure him in his business or calling, or in his social standing is a libel. The publication of the article complained of would necessarily have the effect of holding appellee up to the contempt and ridicule of his associates and acquaintances. Where the effect of the language is to hold a person up to contempt and ridicule, we do not deem it necessary that the petition should have alleged that the bringing of a suit wtihout authority was unprofessional in Paducah or elsewhere. According to the ordinary rules of common sense and reason, it is unprofessional to bring a suit under such circumstances. When the article in question charged appellee with bringing an unauthorized suit, the libel was complete. It was un-

necessary to add the words which counsel for appellants insist should have been in the petition. We are, therefore, of the opinion that the demurrer to the paragraph containing the above quotation should have been overruled.''

It is also true that when the language of the defamatory article complained of is unambiguous, its construction is one of law for the court, and plaintiff is not required by innuendo to point out its meaning or its application to himself. Newman on Slander and Libel, Third Edition, 752; Axton-Fisher Tobacco Co. v. Evening Post Co., *supra;* 17 R. C. L. 425; Hume v. Arrasmith, 1 Bibb 166; Brite v. Gill, 2 T. B. Mon. 65, and Register Publishing Co. v. Worten, *supra.*

With these principles of the law relating to libel and slander in mind we have but little difficulty in determining that the article complained of in this case is libelous *per se,* and that it referred to plaintiff in his professional capacity. It charges that the attorney who filed the intervening petition of Mahin and others in the Vallandingham suit, then pending in the Fayette circuit court—filed for the purpose of winding up the affairs of the Burley Tobacco Company and the appointment of a receiver for that company—had used the names of Mr. Mahin and others in making them parties to that suit without authority to do so from any of them. It further charges plaintiff in connection with others, of having circulated a paper and procured the signatures of Mahin and others through fraudulent representation that the paper circulated and signed was only a direction to demand in the names of the signers an inspection of the books of the tobacco company, and if refused, then the filing of a suit to procure such inspection, and that under such fraudulently procured authority plaintiff filed the intervening petition of the signers in the receivership suit. It furthermore carried the insinuation that the attorney who filed the intervening petition of Mahin and others had committed some character of offense for which he was amenable to the intervenors, but that they did not express any intention of resorting to any proceeding against the attorney.

It is, therefore, manifest that the charges contained in the published article come literally within the rule, *supra,* with reference to professional conduct generally, in that they tend to subject the one charged to ridicule

and contempt, and the publications also fall directly within the doctrine of the case of Register Publishing Company v. Worten, *supra*. We can not agree with the contention of defendant's attorneys that there is any distinction between the charges in that case or the person to whom they referred and the charges and the one to whom they referred in this case. On the contrary, the publication in the instant case is stronger in one respect than the one in the Worten case, in that it accuses plaintiff of procuring authority to do one thing and of doing an entirely different thing thereunder.

The next question is, was the publication true or substantially true? In answering this question it is necessary to make a brief statement of some of the facts. The Burley Tobacco Company was a corporation with two million ($2,000,000.00) dollars capital stock, which stock was owned, in large measure, by the growers of burley tobacco in central Kentucky. Defendant owned some of the stock, as did Mahin and others, who executed the authority under which plaintiff. filed their intervening petition heretofore mentioned.

In May, 1915, a few of the stockholders of the Burley Tobacco Company filed suit against it and some of its officers, charging many derelictions and failures of duty, as well as fraudulent acts, and asked that the affairs of the corporation be wound up, its assets sold and divided among the stockholders in proportion to their shares, and as a means of accomplishing this end a receiver was asked to take charge of the assets and of the affairs of the company. Plaintiff was approached to file that suit but declined to do so, expressing his willingness, however, to come into the suit later on if other stockholders should conclude to join therein. Some time in June after the suit was filed a motion was made in that case to require defendant to produce its books for the inspection of plaintiffs therein. The motion was in writing, and signed by Baker & Bablitz as "attorneys for plaintiffs," the plaintiff herein being a member of that firm.

Shortly thereafter plaintiff's firm filed an intervening petition in the receivership suit (known and spoken of in this record as the Vallandingham suit) in behalf of one Wilhoit and others, to which petition plaintiff's firm name was signed as attorneys for plaintiffs. After that Mahin and others, concerning whose intervening petition

the article complained of was published, signed this writing:

"Whereas, there is now pending in the Fayette circuit court a suit by J. L. Vallandingham and others against the Burley Tobacco Company, in which suit the court is asked to compel the company to make a full report of all the acts, transactions, expenditures and assets of the company, and to compel a proper management of the business of the company, or a distribution of its assets among its stockholders, now we, the undersigned stockholders, hereby authorize the attorneys for the plaintiffs in this action to present to the court a petition for us to be joined with the plaintiffs, and ask the court to grant the relief sought in that action."

It was pursuant to the authority given by this writing that plaintiff, Baker, filed the intervening petition referred to in the libelous publication complained of. It is admitted by Mahin, Wilson and others that the above authority to use their names, as intervenors in the Valladingham suit, was signed by them, but they claim that they did not *intend thereby* to authorize or request any action except for a demand of an inspection of the books of the tobacco company, and if refused, the filing of a suit for that purpose. They furthermore say that the plaintiff, Baker, was not present, nor did he procure them to sign that authority; that it was procured from them by one Pearce and one Sandusky. Plaintiff denies that he ever procured Pearce or Sandusky, or anyone else, to obtain such authority from Mahin or other person. Both Pearce and Sandusky swear that they procured the signatures of Mahin and others to that authority without the solicitation, knowledge or request of plaintiff.

The testimony of these witnesses upon this point is not denied in the record by any other witness or circumstance. It is true that upon one occasion plaintiff went with Pearce to Jessamine county, where Mahin and others resided, and upon that occasion Pearce obtained the signatures of those persons to a paper authorizing a demand for the investigation of the books of the tobacco company, and if refused, the filing of a suit for that purpose. But it is nowhere shown that Baker solicited any signatures to even that paper, or that he was present when any of them were made, although he afterwards made demand for an inspection of the books of the tobacco company, and when refusal was made filed a suit to

compel such inspection. We see nothing in the foregoing circumstance to connect plaintiff with the procuring of the signatures of Mahin and others to the authority for the use of their names as intervenors in the Vallandingham suit.

We therefore conclude from the testimony in this record that the charge in the libelous article complained of to the effect that the intervening petition of Mahin and others was filed in the Vallandingham suit without authority from them to do so was false, since the uncontradicted testimony shows that they gave written authority for the filing of the intervening petition in their names, and the court erred in submitting that issue to the jury in any of the instructions, but which error alone would not authorize a reversal, since its submission is contained in those offered by plaintiff. But it is insisted that, conceding such to be true, the authority to file the suit was not given to the *plaintiff, Baker,* but we think the testimony leaves no doubt as to the incorrectness of this contention. The written authority referred to the pendency of the Vallandingham suit, and the purpose for which it was filed, and then adds that the signers do "hereby authorize the attorneys for the plaintiffs in this action (the Vallandingham suit) to present to the court a petition for us to be joined with the plaintiffs, and ask the court to grant the relief sought in that action."

As we have already seen, the plaintiff Baker at the time that authority was executed was one of the attorneys of record in the Vallandingham suit, and he was thereby authorized to file the intervening petition of Mahin and others. The defamatory publication, then being libelous *per se,* and false, as we have found, the only defense available to the defendant to the charges contained in the original petition was a denial of the publication. Upon this point there was a contrariety of evidence, which made it an issue to be submitted to the jury. Upon the issue presented by the original petition and answer thereto and the evidence heard thereon, the plaintiff offered instructions A and B.

Instruction A directed the jury to find for plaintiff if they believed that plaintiff procured, commanded or caused the publication to be made, unless the jury should believe from the evidence that all of the defamatory charges contained therein were in fact or in substance true, in which case they should find for the defendant.

Instruction B defined the measure of damages. The court sustained the motion as to instruction B, and gave it to the jury, but modified instruction A by requiring the jury to believe not only that defendant caused, commanded or procured the publication of the article, but that in doing so he intended to and did charge plaintiff with the libelous offenses therein contained. This modification of the offered instruction A was clearly error, since it is thoroughly settled that when a libelous or slanderous defamation is actionable *per se,* the publisher thereof is conclusively presumed to intend what his language in its usual and ordinary meaning expresses. 25 Cyc. 371; 17 R. C. L. 323; Newman on Slander and Libel, third edition 362; Nicholson v. Rust, 21 Ky. Law Reporter 645; Marksberry v. Weir, 173 Ky. 316, and Ray v. Shemwell, 186 Ky. 422. The court should have given to the jury under the testimony heard on the trial, instruction A offered by plaintiff without any modification, except to have eliminated therefrom the submission of the issue as to the truth of the libelous charges.

Privileged communications, for the speaking or publishing of which the defendant is not liable in slander and libel suits, are two kinds—one being an absolute privilege and the other only a qualified one. We are not concerned in this case as to what constitutes an absolute privilege, since defendant relies, and could only rely under the facts of this case, upon a qualified privilege in defense of the mailing of the paper containing the published article to various stockholders of the Burley Tobacco Company, of which complaint is made in the various counts of the amended petitions. Indeed it is only in defense of those causes of action that the privilege could be urged, since it would have been inconsistent to plead it in defense of the one set out in the original petition, inasmuch as defendant denied any responsibility for the publication therein declared on. Edwards v. Kevil, 133 Ky. 392. Whether the occasion of the defamatory publication is or not privileged is usually a question of law to be determined by the court. Newell on Slander and Libel, sections 392, 499, 565; 17 R. C. L. 427; Sebree v. Thompson, 126 Ky. 223. The text in R. C. L. in stating this rule says:

''Whether the publication is or is not privileged by reason of the occasion is a question of law for the court

alone, where there is no dispute as to the circumstances under which it was made.''

One of the numerous occasions affording defendant a qualified privilege is where ''the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged if made in good faith and without actual malice.'' 25 Cyc. 385; Idem. 393; Nix v. Caldwell, 81 Ky. 293; Hart v. Reed, 1 B. Mon. 166; Odgers on Libel and Slander, pages 277-278; Newell on Slander and Libel, section 561, and 17 R. C. L. 341. Under this rule we think there is no doubt that the occasion of defendant's mailing the paper containing the offensive article to his associate stockholders in the Burley Tobacco Company was a privileged one. Both he and the persons to whom the paper was mailed had a common interest in the property and affairs of the tobacco company, as well as in the matters charged in the receivership suit, and if he did not exceed his privilege, and acted in good faith, without malice, and under the *bona fide* belief of the truth of the article, he would not be liable.

That a defendant would lose his right of qualified privilege if he acted maliciously or in excess of the privilege, or with knowledge of the falsity of the communication, is well settled. Odgers on Libel and Slander, pages 277-278; Newell on Slander and Libel, section 577, and authorities, *supra.*

In submitting the issues presented by the causes of action alleged in the amended petitions, plaintiff offered three instructions upon each count, they being identical except as to the person to whom the papers were mailed. The first one properly submitted what was necessary to constitute a publication of the article by mailing the papers. The second one directed the jury to find for the plaintiff if they believed that the publication was made as outlined in the first instruction; if in publishing it the defendant was prompted by actual malice (defining it), or a reckless disregard of the plaintiff's rights, or defendant knew that the publication, or some material or substantial part of it, was false, or that it was false and he did not have probable cause to believe it to be true, or it contained excess matter (defining it), unless the jury believed the statements in the article true or substantially true, in which event they would find for the defendant.

The other offered instruction properly defined the measure of damages if a verdict should be returned in favor of plaintiff. The three instructions above referred to correctly embody our view of the law as above outlined, except that no issue as to the truth of the charges should have been included under the evidence as we have already found. The court gave two other instructions, one of which (3-a) purports to be the converse of the second one offered by plaintiff and given to the jury. This attempted converse instruction did not embody all of the conditions under which the jury were authorized to return a verdict for plaintiff; it permitted the jury to return a verdict for the defendant although it might believe that one of the conditions in the second instruction (though not included in the one given) existed. This rendered the converse instruction inconsistent with and contradictory to the one offered by plaintiff, and given, and constituted prejudicial error.

Another instruction given by the court on its own motion, and over the objection of plaintiff, was 4-a. Under the facts of this case we fail to see the relevancy of that instruction. It purports to set out and submit what would constitute the defendant's privilege, although the court had already assumed as a matter of law in the instructions given at the instance of plaintiff (as we have herein held) that the qualified privilege existed, subject to be lost, however, upon the conditions named in those instructions, and instruction 4-a neither could nor did add any force thereto, or in any wise enlighten the jury as to defendant's rights. Moreover, it was faulty in that it did not submit the above restrictions to the defense of qualified privilege.

Numerous complaints are made with reference to the introduction of irrelevant testimony. To undertake to notice all of the objections under this head would extend this already too lengthy opinion beyond reasonable limits. It was proper to introduce the petition in the Vallandingham suit, and amendments thereto, since they contained evidence of plaintiff's connection with that suit, and also some facts tending to prove the plea of privilege.

We fail to see the relevancy of the detailed statement in the answer in this case of the organization of the Burley Tobacco Society, or any testimony relating thereto. Nor does the long synopsis of the pleadings in

'the Vallandingham suit have any place in this record. Neither was it proper to permit the introduction of another article appearing in the mailed papers known in this record as the "Duke article," or any testimony concerning it. Those matters are wholly foreign to the issues involved in this case. There may be other items of testimony which, strictly speaking, are irrelevant, but their only possible effect is to encumber the record, since we do not regard them as having any prejudicial effect upon plaintiff's rights.

It is also complained that instead of a general verdict the jury should be directed to return a separate verdict upon the original petition, and one upon each count of the amended petitions. In view of the fact that the libelous counts have each some characteristics peculiar to itself, and perhaps some features not common to all, it would perhaps be the better practice to require at the hands of the jury separate verdicts, one on the original petition and one upon each of the amended petitions, and upon another trial the court will direct 'the jury accordingly.

Wherefore the judgment is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.