## Bonham v. Dotson, et al.

(Decided November 19, 1926.)

## Appeal from Warren Circuit Court.

1. Libel and Slander.—Letter tending directly to prejudice and injure third person in his profession, trade or business is actionable.

2. Libel and Slander—Letter from School Trustee to State Superintendent, Asserting Incompetency of Proposed School Building Contractor, Held to Refer so Plainly to Him as to Entitle Him to Sue, though Not Particularly Named Therein.—Letter from school trustee to state superintendent, stating that person proposed to be employed to erect school building was incompetent, held to refer so plainly to such person as to entitle him to sue for libel though he was not particularly named in it.

3. Libel and Slander—Letter from School Trustee and Chairman of Building Committee to State Superintendent, Asserting Proposed Building Contractor's Incompetency, Held Privileged, if Not False and Malicious (Acts 1924, chapter 58).—Letter from school trustee and chairman of building committee to state superintendent, stating that proposed school building contractor was incompetent, and calling on superintendent to use his efforts to have building erected by reliable methods, held privileged, if not false and malicious, in view of superintendent's duties and powers under Acts 1924, chapter 58, as communication on matter in which both writers and recipient had an interest and duty.

4. Libel and Slander—Letter from School Trustee and Chairman of Building Committee to State Superintendent, Asserting Proposed Building Contractor's Incompetency, Held Not Absolutely Privileged.—Letter from school trustee and chairman of building committee to state superintendent, stating that proposed building contractor was incompetent, and calling upon superintendent to use his efforts to have building erected by reliable methods, held not absolutely privileged; not being made in judicial or legislative proceeding nor in connection with expressed legal duty to communicate with head of department.

5. Libel and Slander—Petition Alleging that Statements in School Trustee's Letter to State Superintendent were Made Falsely and with Malicious Intent to Hinder Plaintiff in Securing Building Contract and Injure Him in His Business Held to State Good Cause of Action.—Petition averring that statements in letter from school trustee and chairman of building committee to state superintendent, asserting proposed building contractor's incompetency, were made falsely and maliciously with malicious intent to hinder him in securing contract and injure him in his business, held to state cause of action for libel, as showing that communication was not qualifiedly privileged.

6. Pleading.—Demurrer to petition admits facts pleaded therein.

V. J. PRITCHETT and JOHN L. STOUT for appellant.

RODES & HARLIN for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

A demurrer having been sustained to the petition of the appellant, who was the plaintiff below, and he having declined to plead further, his action was dismissed and he appeals.

In the petition it is averred that the appellant had for a number of years been engaged in the business of building and erecting houses, and that he had acquired a good reputation in the community as such a building-contractor. It is further averred that the appellee Dotson, who was the trustee of the Richpond school district, and the appellee Holman, who was the chairman of the building committee of that school district, wrote a letter to Hon. McHenry Rhoads, state superintendent of public instruction, stating that a school building was about to be erected in the district represented by the appellee Dotson; that the county superintendent of schools and the county board proposed employing the appellant in that connection; that the appellant was incompetent to do the work which was proposed to be confided to him; and that they called upon Mr. Rhoads to intervene and use his efforts in having the new school building erected by reasonable, reliable and good methods. It is also averred in the petition that the statements in this letter attacking the ability of the appellant to perform the work proposed to be confided to him were false and were written with a malicious intent to hinder him from securing that work and with the malicious intent to injure him in his business and reputation, and that by reason of this letter he lost the contract for the building of this school. It is practically conceded that this letter was actionable since it tended directly to the prejudice and injury of the appellant in his profession, trade or business. Baker v. Clark, 186 Ky. 816, 218 S. W. 280; Vanover v. W. M. Ritter Lumber Co., 186 Ky. 223, 216 S. W. 366; Marksberry v. Weir, 173 Ky. 316, 190 S. W. 1108; and Spears v. McCoy, 155 Ky. 1, 159 S. W. 610. It is true that

some contention is made that, inasmuch as the appellant was not specificallly named in this letter, he cannot maintain an action upon it, but in Axton-Fisher Tobacco Co. v. Evening Post, 169 Ky. 64, 183 S. W. 269, it was held that where a publication as a whole is plainly directed at a person or corporation, the person or corporation so assailed may maintain an action for libel as if he or it were particularly named or described though the name has not been actually designated in the publication. In 36 C. J. 1158 the rule is thus stated:

"Defamatory words to be actionable must refer to some ascertained or ascertainable person and that person must be plaintiff. If the words used really contain no reflection upon any particular individual no averment can make them defamatory. It is not, however, necessary that plaintiff should be mentioned by name if the words used in describing the person meant can be shown to have referred to him and to have been so understood by others. It is not necessary that all the world should understand that the charge referred to plaintiff; it is sufficient that those who know plaintiff can make out he is the person meant; but the liability of defendant depends on whether the defamation was calculated from its intrinsic quality to lead other persons to believe that it referred to plaintiff."

In this case, in the light of the averment in the petition, there can be no doubt about the person to whom the appellees were referring in this letter, and although the appellant was not particularly named in it, yet, as the publication plainly pointed to him, and the recipient of the letter plainly so understood it, the fact that the name of the appellant was omitted from the letter will not preclude him under the circumstances from maintaining this action.

It is contended, though, that the lower court correctly sustained the demurrer to the petition because this communication was absolutely privileged. That it was a privileged communication, if not falsely and maliciously made, can hardly be questioned, because by chapter 58 of the Acts of 1924 the superintendent of public instruction was invested with certain duties and powers, among

which, as appear on page 102 of the compilation of such Acts, are these:

"He shall prepare, or cause to be prepared, and submit for approval and adoption by the state board of education, plans for public school buildings and toilets, and shall advise with public school officials and interested citizens on planning and constructing the same. He shall receive all plans, specifications and contracts, as submitted by county boards of education and boards of trustees of graded common schools, for new public school buildings and for the repair of old buildings, examine or cause to be examined and approve or disapprove the same."

In Thompson v. Bridges, 209 Ky. 710, 273 S. W. 529, we said:

"'If a communication is made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest or in reference to which he has a duty, public, personal or private, either legal, judicial, political, moral or social, and to a person having a corresponding interest or duty,' such communication" is privileged.

Here the district school trustee and the chairman of the building committee certainly had an interest and a public duty in connection with the erection of this schoolhouse, and, as we have seen from the quoted portions of the 1924 Acts, so did the state superintendent of public instruction, and, the communication being upon such matter in which both had an interest and duty, the communication unquestionably was privileged.

The next question to determine is whether such privilege was qualified or absolute. In the case of Tanner v. Stevenson, 138 Ky. 578, 128 S. W. 878, the court, in commenting on the law of absolute privilege, said:

"The cases to which this privilege applies are few in number and ought not to be enlarged. It would be a dangerous and vicious thing to license people to write and speak without any restraint. There are many evil-minded and recklessly disposed who would shelter if they could under the protection afforded by absolute privilege and give free bridle to tongue and pen to injure or destroy an enemy. . . .

"The law holds good character in high esteem and has made it a serious offense to wantonly assault it; but there are a few instances in which the interest of the public is esteemed more important than that of the individual, and occasions in which private rights must yield to public good. In these cases there is no penalty attached to malice or falsehood. . . . But the cases to which this immunity from liability applies are confined to judicial and legislative proceedings, matters involving military affairs, and communications made in the discharge of a duty under express authority of law by or to heads of executive departments of state.''

In this Tanner case the county superintendent of schools had written a defamatory letter to the state superintendent of public instruction concerning a school teacher who was seeking to obtain a state certificate in the effort to prevent her from so doing, and it was held that such communication was not absolutely privileged.

In the case of Ranson v. West, 125 Ky. 457, 101 S. W. 885, a common school trustee wrote to the county school superintendent a letter concerning his predecessor in office and demanded that the county school superintendent take action against his predecessor for certain wrongdoings charged in the letter. We held in substance that this communication was not absolutely privileged, but only qualifiedly privileged. We think these two cases are conclusive of the contention of the appellee that the communication here complained of was absolutely privileged. It was not made in a judicial or legislative proceeding, neither was it made in a matter involving the military affairs, nor in connection with any duty to communicate to or with a head of a department expressly enjoined by law It was a communication sent upon a subject matter in which both the sender and the recipient had a public interest, and concerning which both had a public duty to perform, and, if made in good faith, without actual malice, and with reasonable and probable grounds for believing it to be true, it was qualifiedly privileged. We therefore hold that the communication here, although qualifiedly privileged, is not absolutely privileged. The petition averred that the statements contained in this letter were false and malicious and made with the malicious intent to hinder appellant in the securing of the building contract he sought

and to injure him in his business. In the Thompson v. Bridges case, *supra,* we held that if a publication be qualifiedly privileged the plaintiff must then prove actual malice, but that such malice may be inferred from the falsity of the statements contained in the publication and that if such malice be established, the shield of qualified privilege no longer protects the defendant. Since the petition in this case averred the communication was made falsely and maliciously and with the malicious intent to hinder appellant in the securing of the building contract and to injure him in his business, it follows that the communication was not qualifiedly privileged, since the demurrer admitted the facts so pleaded. It results that the petition stated a good cause of action and that the demurrer thereto was improperly sustained. The judgment is therefore reversed, with instructions to proceed in accordance with this opinion.