MARIO'S ENTERPRISES, INC.,
Plaintiff,

v.

MORTON–NORWICH PRODUCTS,
INC., Defendant.

No. C 79–0624–L(B).

United States District Court,
W. D. Kentucky,
Louisville Division.

April 22, 1980.

Eric M. Lamb, Louisville, Ky., for plaintiff.

Rucker Todd, Louisville, Ky., for defendant.

### MEMORANDUM

BALLANTINE, District Judge.

Defendant, Morton-Norwich Products, Inc., has alternatively moved the Court: (1) to dismiss the complaint for failure to state a claim upon which relief can be granted;

or (2) to grant judgment on the pleadings on the grounds that there is no genuine issue of material fact.

Plaintiff, Mario's Enterprises, Inc., alleges in its complaint that during a period of time from late 1979 through early 1980 defendant had television advertisements broadcast for one of its products, Pepto-Bismol, which contained statements libelous of plaintiff. Plaintiff operates a chain of Italian restaurants in the Louisville, Kentucky and Southern Indiana area under the trade name, "Mario's". The pertinent part of the commercial depicts a firefighter, obviously in a fire station, describing to the audience his epigastric distress. He is unable to determine whether its onset should be attributed to a 2-alarm fire or Mario's 3-alarm meatballs. The reference to Mario is accompanied by a gesture toward a man in the background. The man is stirring a Macbethian kettle, adding ingredients without regard for measuring devices. Whatever the cause, the firefighter is laid low by 4-alarm indigestion, a condition which brings on a mal-de-mer green complexion and physical changes which render him almost amorphous. Ingestion of defendant's product miraculously restores the firefighter to his normal color, contour and condition of digestive serenity.

The defendant's motion to dismiss and motion for summary judgment are based on three main points: (1) the alleged libel refers only to a food product and is neither defamatory nor libelous without allegation of special damages; (2) the statement in question does not defame plaintiff because it refers to the firehouse cook, "Mario", in the background of the commercial, and not the plaintiff; and (3) the name "Mario" applies to a large class of restaurants and, thus, even if the advertisement is defamatory it applies to the whole class as much as to the plaintiff.

Plaintiff has tendered a motion for leave to file a second amended complaint wherein plaintiff pleads that it has suffered special damages in the form of lost patronage, lost profits, and lost royalties. Plaintiff also avers in the second amended complaint, "Upon information and belief the defendant employed local advertising agencies for the purpose of implementing its subject advertising campaign in the Louisville area." Defendant opposes the plaintiff's motion to amend. Defendant asserts that it never employed local advertising agencies in its campaign using the subject commercial, and supports this statement with an affidavit of Donald M. Howard, Senior Product Manager for Norwich-Eaton Pharmaceuticals. Defendant thus concludes that the proposed amendments are in part without basis in fact and as a whole cannot remedy the fatal defects attacked in the motion for summary judgment and supporting affidavits.

Plaintiff states in a letter accompanying its April 15, 1980, reply memorandum that because of the number of lengthy briefs filed in this case it is renewing its request for oral argument. While there is authority to suggest that it is appropriate to grant oral argument before entering summary judgment, e. g., *Dredge Corp. v. Penny*, 338 F.2d 456, 461–62 (9th Cir. 1964), in this uncomplicated case, where the affidavits and other documentary evidence establish that there is no genuine issue of a material question of fact and where the legal questions are sufficiently discussed in the briefs, it is in the interest of judicial economy for the Court to decide this motion without oral argument. *See, Spark v. Catholic University*, 510 F.2d 1277, 1280 (D.C.Cir. 1975); *Parish v. Howard*, 459 F.2d 616, 620 (8th Cir. 1972); *Season-All Ind., Inc. v. Turkiye Sise Ve Cam Fabrik., A.S.*, 425 F.2d 34, 39 (3d Cir. 1970). Plaintiff has had ample opportunity to demonstrate that there is a factual issue in this case. Not only has plaintiff failed to produce any evidence to support its allegations that the commercial in question constitutes a legal libel of plaintiff, plaintiff has not suggested any possible showing it could make at oral argument (nor do we think any could be made) to support its allegations. In plaintiff's April 15, 1980, reply memorandum, it is alleged that defendant's April 1, 1980, response to plaintiff's motion to amend is, in reality, a reply memorandum to plaintiff's memorandum in opposition to defendant's motion to

dismiss and for summary judgment. All briefs, affidavits, and other evidence of record have been carefully reviewed and given appropriate consideration.

■ Defendant moves alternatively to dismiss for failure to state a claim upon which relief can be granted (F.R.Civ.P. 12(b)(6)) and for summary judgment (F.R. Civ.P. 56(b)). The motion for dismissal is primarily premised on defendant's argument that plaintiff failed to allege special damages which must be proved in support of plaintiff's case. Both parties essentially acknowledge that disparaging words about a merchant's goods are not actionable per se unless the words contain an imputation of fraud, deceit, dishonesty or other reprehensible conduct on the part of the merchant. *White v. Hanks*, Ky., 255 S.W.2d 602 (1953). Plaintiff, however, argues that the commercial goes beyond "mere criticism of the quality of Mario's meatballs" to the point that the advertising "impute[s] reprehensible conduct to Mario's in the eyes of the viewing audience." (P. 8 of plaintiff's March 19, 1980 memorandum.) The Court finds this argument to be wholly without factual support. Assuming *arguendo*, that "Mario's 3-alarm meatballs" can reasonably be construed to apply to plaintiff's food products, there is still no basis to impute any type of reprehensible conduct to the plaintiff. Plaintiff's interpretation appears to be wholly fanciful, "for it certainly is not warranted by any fair interpretation of the publication itself." *Boyd v. Hutton*, 196 Ky. 512, 514, 244 S.W. 880, 881 (1922). It is clear that as a matter of substantive law plaintiff must allege and prove special damages. *White v. Hanks, supra.* Generally, in the absence of prejudice to the defendant, a court will allow a plaintiff to amend under Rule 15(b) to prevent dismissal. *See Diehl & Sons, Inc. v. International Harvester Co.*, 445 F.Supp. 282 (E.D.N.Y.1978). However, for the reasons discussed below, the Court does not here reach the question of dismissal or plaintiff's motion to amend.

Rule 12(b)(6) permits defendant to attack the sufficiency of plaintiff's complaint. The rule limits the Court to an examination of the sufficiency of the pleadings. *See Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 102 (1957). Dismissal under Rule 12(b)(6) is appropriate when it is clear that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Jenkins v. McKeithen, supra; Conley v. Gibson, supra; Abrams v. Carrier Corp.*, 434 F.2d 1234, 1242 (2d Cir. 1970); *Dann v. Studebaker-Packard Corp.*, 288 F.2d 201 (6th Cir. 1961). However, for a number of reasons, not the least of which is the desirability of determining an action on its merits, courts have been reluctant to dismiss on technical grounds. *See Madison v. Purdy*, 410 F.2d 99 (5th Cir. 1969); *Dann v. Studebaker-Packard Corp., supra; Oil Chemical and Atomic Workers International Union, AFL–CIO v. Delta Refining Co.*, 277 F.2d 694 (6th Cir. 1960).

In contrast to a Rule 12(b)(6) motion to dismiss, a motion under Rule 56(b) is a judgment on the merits and may be based on the pleadings, affidavits, depositions and any other relevant evidence of record. Upon closer scrutiny the distinctions between Rules 12(b)(6) and 56(b) are not of as great significance as they may appear at first blush. Rule 12(b) provides in pertinent part:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Under the circumstances of this case, the Court concludes that it is appropriate first to determine if defendant is entitled to judgment under Rule 56(b). *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Plante v. Shivar*, 540 F.2d 1233, 1234–35 (4th Cir. 1976);

*Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 392 (6th Cir. 1975). Since we conclude that such relief is appropriate, no further discussion of defendant's motion to dismiss is necessary.

In considering a motion for summary judgment, the Court must first determine whether there are any genuine issues of material fact to be resolved at trial and whether the moving party is entitled to judgment as a matter of law. Rule 56(b). If there exists a genuine issue for trial, that is, a legal theory exists which remains viable under the nonmoving party's version of the facts and which would entitle that party to a judgment as a matter of law assuming his version of the facts to be true, the motion for summary judgment must be denied. *See Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir. 1976); *McGuire v. Columbia Broadcasting System,* 399 F.2d 902, 905 (9th Cir. 1968); *Gaines v. Carrollton Tobacco Board of Trade, Inc.,* 386 F.2d 757 (6th Cir. 1967); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir. 1962).

■ Defendant asserts, *inter alia,* that the commercial does not defame plaintiff because it refers to the firehouse cook, "Mario", in the background of the commercial, and not to the plaintiff. Plaintiff argues, in opposition, that the commercial portrays Mario's meatballs as unhealthy and unwholesome and that by the sale of these food products, plaintiff is portrayed as guilty of not only reprehensible but criminal conduct. Plaintiff states in its March 19, 1980, brief:

> "The fireman is clearly portrayed as being ill, and the Defendant's product is portrayed as being a panacea for a severe medical problem. The Defendant, in its zeal to favorably portray its products to the end that as many customers as possible might purchase it, left no stone unturned in painting this picture of the Defendant as a hero, and Mario's meatballs as the culprit." (p. 3.)

With regard to defendant's contention that the "Mario" referred to in the commercial is the firehouse cook, plaintiff counters:

> "By use of humor and special effects, the commercial effectively attracts the primary attention of the viewers to the fireman in the foreground. Undoubtedly the commercial was designed to do just that, because Morton-Norwich cannot sell its medication by getting viewers to focus attention on any cook in the background. The so-called 'Mario' in the background is not named in the commercial, does not speak and is only on the screen for a fleeting moment. He is obscured in the dimly lit background, and seems to look up, not for the purpose of identifying himself as the preparer of the meatballs, but for the purpose of laughing at and reacting to the predominant fireman character in the foreground. Only the most attentive and perceptive viewer would understand the commercial in any other way. At the very least, the commercial is ambiguous, and raises a jury question as to its meaning in the eyes of the reasonable viewer." (P. 3 of plaintiff's March 19, 1980, brief.)

Plaintiff reemphasizes in its April 15, 1980, memorandum that whether the reference to "Mario" is to the firehouse cook is a question of fact for the jury. Plaintiff also disputes defendant's interpretation of various cited authority. Plaintiff asserts as a general rule, "that if the Morton-Norwich commercial is reasonably capable of a defamatory construction, either on its face, or indirectly, as shown by proper proof of inducement and innuendo, a question of fact arises for the jury." (p. 6 of plaintiff's April 15, 1980, brief.) However, this commercial is neither reasonably capable of a defamatory construction or of an application to plaintiff. The record contains a video tape (which the Court has viewed) and still pictures of the commercial. The relevant portion of the commercial involves an actor dressed as a firefighter stating:

> "I'm not sure what did it—the 2-alarm fire, or Mario's 3-alarm meatballs—but last night I woke up with a 4-alarm case of In-di-ges-tion."

The Court has reviewed the evidence of record and concludes that no reasonable

viewer could construe this commercial as referring to plaintiff's restaurants. The plaintiff's arguments that the commercial refers to plaintiff's restaurants are as fanciful and as unwarranted an interpretation of the commercial as plaintiff's earlier-discussed contentions that the commercial imputes reprehensible conduct to the plaintiff. The commercial does not depict or refer to a restaurant nor are plaintiff's restaurants in any other way specifically referenced. As plaintiff concedes, the actor in the commercial is clearly portraying a firefighter. Further, the setting reasonably portrays a firehouse with a firehouse cook in the background who, unencumbered by any measuring devices, is adding ingredients, apparently spices, to a large steaming kettle which he is stirring. The cook looks up in the direction of the speaking firefighter when "Mario's 3-alarm meatballs" are mentioned. The firefighter in the foreground, as he comments' on Mario's meatballs, points over his shoulder at the firehouse cook. Clearly, a reasonable viewer of this commercial could only conclude that "Mario" is the name of the firehouse cook in the background and that the meatballs are the product of the questionable culinary skills of this same firehouse cook.

▬▬ The only link between the meatballs mentioned in the commercial and the plaintiff is the name "Mario", which in this case clearly refers to a character in the commercial. In order to support a finding of defamation there must be evidence from which a reasonable person could find that the words in question apply to plaintiff.[1] In this case there is no such evidence. Not only is Mario the first name of many individuals, it is also a common name for Italian restaurants (see below). There are simply no facts to support plaintiff's theory that the commercial refers to its restaurants. Although on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party, summary judgment is nonetheless appropriate when the evidence is not susceptible to the interpretation the non-moving party seeks to give it. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Morrison v. United States*, 449 F.Supp. 654, 660, 663 (N.D.Ohio, 1977). See *Chavez v. Noble Drilling Corp.*, 567 F.2d 287 (5th Cir. 1978); *Alcala v. Burns*, 545 F.2d 1101 (8th Cir. 1976). *Cf. Croley v. Matson Navigation Co.*, 434 F.2d 73 (5th Cir. 1970); *Empire Electronics Co. v. United States*, 311 F.2d 175, 180 (2d Cir. 1962). When there is no genuine issue of material fact, the Court may enter summary judgment. *Chavez v. Noble Drilling Corp., supra; Henslee v. Jones*, 207 F.2d 599 (6th Cir. 1953).

Even if, contrary to the above conclusion, the record supported the plaintiff's contention that the name "Mario's" in the commercial could be understood to refer to one or more of the plaintiff's restaurants, plaintiff would still have an insurmountable obstacle to the defeat of the summary judgment motion. Defendant has presented uncontradicted evidence that there are at least 391 restaurants, foods services and related businesses in the United States bearing the name "Mario's" or a very similar designation. Even if the commercial referring to "Mario's meatballs", which was broadcast nationwide, could be construed to refer to a restaurant, it would be just as applicable to all the other restaurants bearing the name "Mario's" as to the plaintiff. Plaintiff's allegations, given the above contrary-to-fact assumptions, at best make out a case of class defamation. In *Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders*, Ky., 563 S.W.2d 8 (1978), plaintiff, a restaurant-owner, sought damages for libel and

---

1. Both parties acknowledge this rule and cite the case of *Bonham v. Dotson*, 216 Ky. 660, 662, 288 S.W. 297 (1926), wherein the Court, quoting 36 C.J. 1158, stated the rule as follows: "Defamatory words to be actionable must refer to some ascertained or ascertainable person and that person must be plaintiff. . . . The liability of defendant depends on whether the defamation was calculated from its intrinsic

slander.[2] The fact that there were a large number of outlets selling the particular food product and there was nothing in the newspaper article in question which identified the plaintiff's particular restaurant rendered dismissal appropriate. The Supreme Court of Kentucky said:

"To defame a class, the statement must be applicable to every member of the class, and if the words used contain no reflection upon any particular individual, no averment can make them defamatory. (Citations omitted.)" 563 S.W.2d at 9.

*Accord, Neiman-Marcus Co. v. Lait,* 107 F.Supp. 96, 99 (S.D.N.Y.1952). Plaintiff's attempt to distinguish this action from the holding in *Sanders, supra,* by urging that it is the "only Mario's restaurant in town" is ineffectual. Plaintiff argues that *Sanders, supra,* differs from the present case in that the statements there clearly referred to the Kentucky Fried Chicken chain generally and not to any particular store. As earlier noted, plaintiff quotes *Bonham v. Dotson, supra* for the proposition that a defamatory article must from its intrinsic quality be calculated to lead others to believe it referred to the plaintiff. In this case, there is nothing in the subject commercial to lead anyone to believe that "Mario's" refers even to a restaurant, much less to plaintiff's restaurants out of the many restaurants bearing that name. Where there are almost 400 restaurants so named, plaintiff cannot sustain the burden of showing that the alleged libel refers to its restaurants. In fact, as discussed above, plaintiff has failed to show that the alleged libel could even be reasonably understood to apply to any restaurant. The motion for summary judgment will be granted.

quality to lead other persons to believe that it referred to plaintiff."

2. Colonel Harland Sanders was quoted as opining on the subject of Kentucky Fried Chicken as follows:

"The stuff on the mashed potatoes, for instance.

' "My God, that gravy is horrible. They buy tap water for 15 to 20 cents a thousand gallons and then they mix it with flour and starch and end up with pure wallpaper paste. And I know

An appropriate Order has been entered this date.

wallpaper paste, by God, because I've seen my mother make it.'

'To the "wallpaper paste" they add some "sludge and sell it for 65 or 75 cents a pint. There's no nutrition in it and they ought not to be allowed to sell it."

'And another thing. That new "crispy recipe is nothing in the world but a damn fried doughball stuck on some chicken." *Kentucky Fried Chicken of Bowling Green, Inc. v. Sanders, supra,* 563 S.W.2d at 8–9.