CASE 8.—PROCEEDINGS ON AN INDICTMENT AGAINST H.
T. DUNCAN FOR LIBEL.—November 1.

# Commonwealth v. Duncan

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

From a judgment sustaining a demurrer to the
indictment the Commonwealth appeals—Reversed.

1. **Libel—Criminal Responsibility—Sufficiency of Indictment.—**
An indictment for libel, charging that the publication was
made of and concerning the party libeled, and then setting
out the publication, is sufficient under Criminal Code Prac.,
section 132, providing that "an indictment for libel need not
set forth any extrinsic facts for the purpose of showing the
application, to the party libeled, of the defamatory matter,
but it is sufficient to state generally that the same was pub-
lished concerning him."

2. **Same—Nature of Libel.—**An article calling attention to the
plunderers of the county, and speaking of one as the holder
of many offices, who has been industriously at work for four
years correcting unsatisfactory entries and making new
ones, supplying missing vouchers and putting everything in
"apple-pie" order for investigation, and who will elucidate
explain, modify, or magnify the numerous entries and
vouchers which are to be submitted to the grand jury, is
manifestly calculated to create a disturbance of the peace,
and to bring the official into contempt, and is therefore
libelous as to him.

3. **Same—Privileged Communications.—**Where one while the
grand jury is in session, publishes a libelous article against
an officer, whose acts are to be investigated, and addresses
it to the grand jury, the publication is not thereby privileged,
and is as libelous against the officer as though it were ad-
dressed to the public at large.

4. **Same—Certainty in Indictment.—**An indictment, charging
that the defendant published "a certain false, scandalous

and malicious article for publication, containing words and sentences of and concerning L. E. Pearce, as follows," and then setting out the entire article. is sufficiently definite to show that the statements contained in the article are charged as libelous of Pearce.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellant.

Where the words in a particular case are ambiguous and are fairly capable of two meanings, one harmless and the other defamatory, according to the occasion upon which they were used, or the surrounding circumstances with reference to which they are to be construed, the question as to the meaning of the words and the sense in which they were used, is one for the jury; and in a criminal prosecution where it is doubtful whether the writing contains matter which is libelous per se, the question is one of fact for the jury, rather than a question of law for the court. (A. & E. Ency. of Law, 2 Ed., vol. 28, p. 993.)

SAM'L M. WILSON, counsel for appellee.

### POINTS AND AUTHORITIES.

1. The facts stated do not constitute a public offense. (Am. & Eng. Ency. of Law, 2d Ed., title "Libel and Slander;" Criminal Code, section 132; Criminal Code, sections 122 and 124; Ency. of. Pl. & Pr., vol. 13, art. "Libel & Slander.")

2. The publication complained of was absolutely privileged, and such privilege constitutes a complete bar to this prosecution. (Criminal Code,, section 102; Shields v. Comth., 21 Ky. Law Rep., 1588; Beiser v. Scripps-McRae Pub. Co., 113 Ky., 383; Bunton v. Worley, 4 Bibb., 38; Grimes v. Coyle, 6 B. Monroe, 301; Townshend. on Slander and Libel, 2d Ed., section 220.)

3. Remarks on brief for appellant. (Criminal Code, section 132; Von Ingen v. Mail & Express Pub. Co., 35 N. Y. Supp., 838.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

H. T. Duncan was indicted in the Fayette circuit court for libel. The court sustained a demurrer to the indictment, and the Commonwealth appeals.

The indictment is in these words:

"The grand jury of Fayette county, in the name
and by the authority of the Commonwealth of Ken-
tucky, accuse H. T. Duncan of the offense of libel,
committed as follows, viz.: That said H. T. Duncan
on the 12th day of June, 1904, and within one year
before the finding of this indictment, in the county
aforesaid, did unlawfully, wilfully and maliciously
write, compose, sign and publish and cause to be
published in the Lexington Leader, a daily paper
published in Lexington, Ky., and of general circu-
lation in Fayette county, of and concerning one L. E.
Pearce, who was then and there clerk of the quarterly
court of Fayette county, a certain false and malicious
article of publication containing words and sentences
of and concerning said L. E. Pearce, as follows, to-
wit:

" 'A Faithful Friend on the Grand Jury.

" 'Col. Duncan Addresses an Open Letter to Judge
     Parker Suggesting the Impropriety of Requiring
     a Former Employe and Star Witness of the
     Fiscal Court to Sit on a Jury Charged with the
     Investigation of Its Transactions.

" 'Lexington, Ky., June 11, 1904.

" 'Messrs. Harvey Bain, Foreman; Leonard Tin-
gle, W. A. Cannon, Oliver Redd, J. W. Harp, M. D.
Dunleavy, J. R. Williamson, John P. Innis, Israel
Worsham, L. P. Gumm, H. G. Smith and George W.
Headley, Members of the Grand Jury—Gentlemen: I
have heard a rumor that the county judge was before
you on Monday last and in a full and frank manner
told you that the county books, the vouchers and
checks showing all expenditures during his term of

vol. 127.—4

office were open for your examination at any time
you wished—that you would find them straight and
all right and every dollar accounted for. I could not
ascertain the truth of this rumor, because everything
that is done in regard to county affairs is under the
cover of profound secrecy, but I presume it is true.
Did he promise that his "Fidus Achates"—that
ubiquitous county official who is sometimes "County
Auditor," sometimes "County Book-keeper," some-
times "Clerk of the Quarterly Court" and "In-
structor for the new City Auditor"—would accom-
pany the books and elucidate, explain, modify or
magnify the numerous entries and vouchers which
are to be submitted? Did he explain that this holder
of many offices had been industriously at work for
four years bringing order out of chaos, correcting
unsatisfactory entries and making new ones, supply-
ing missing vouchers and putting everything in
"apple-pie" order for investigation?

" 'There is also a rumor that the judge offered to
have an expert investigation made under orders of
the fiscal court. Don't you know that an investiga-
tion of this kind would be absolute folly? If that
distinguished body of men constituting the fiscal
court are to manipulate an investigation—in other
words, investigate themselves—save the cost and
stick to the Pearce report, declare the court vindi-
cated and indict me for libeling the honest plunderers
of the county.

" 'Every movement that I make in this matter shall
be open and free to the public, and free from con-
cealment just as the city books and records were,
when under inspiration from the courthouse patriots,
Mr. Charles Merriweather began his investigation
into the fiscal affairs, books and records of the city

of Lexington.   The individuals backing the inquisition into city affairs were willing to guarantee the expense in the event of the general council refusing to pay them.   I will be equally liberal and will guarantee Mr. Merriweather's expenses in making an investigation into the county books and business.

" 'I append a letter to Judge Parker which is self-explanatory.   ·

" 'Respectively,        H. T. Duncan.'

"Said article is filed herewith as part hereof, marked 'Exhibit A.'   All of which said statements contained in said article above mentioned made of and concerning L. E. Pearce were false, wilful and malicious, and the said H. T. Duncan well 'knew at the time he so wrote, composed, signed and published said article or publication that all of the aforesaid statements made of and concerning the said L. E. Pearce and contained in said article or publication, aforesaid, were false and malicious; but the said H. T. Duncan composed, wrote, signed and published said article or publication containing the statements aforesaid of and concerning the said L. E. Pearce, and meaning thereby to charge him with the crime of changing and falsifying the public records of Fayette county, and with dishonesty and lack of integrity as a bookkeeper, for the wicked and malicious purpose and with intent to injure his good name and fame as a public officer and man of business and as a citizen of the Commonwealth, and to expose him to public suspicion, hatred, contempt and loss of reputation, against the peace and dignity of the Commonwealth of Kentucky."

It is insisted that the indictment is insufficient for the following reasons: (1) That it fails to show that any of the things contained in the publication applied

to L. E. Pearce, and that there is no inducement or statement of extrinsic facts; (2) that the publication is not libelous as to Pearce; (3) that the indictment shows upon its face that the publication was privileged; (4) that the indictment is indefinite, in this, that it does not show what statements contained in the publication are charged as libelous of Pearce. These objections will · be considered in the order stated.

1. Section 132, Cr. Code Prac., is as follows: "An indictment for libel need not set forth any extrinsic facts, for the purpose of showing the application, to the party libeled, of the defamatory matter; but it is sufficient to state generally that the same was published concerning him." The indictment charges that the publication was made of and concerning L. E. Pearce. This is sufficient, as under the statute it is unnecessary to set forth in the indictment any extrinsic facts for the purpose of showing the application of the defamatory matter to the party libeled. The extrinsic facts showing the application of the defamatory matter may be proved by the Commonwealth on the trial, without setting them forth in the indictment, and the application of the matter is a question for the jury.

2. The rule as to what is libelous is thus stated in 2 Roberson, Crim. Law, 586: "Libel is an offense at common law, and is defined to be any false and malicious publication which tends to blacken the memory of one who is dead, or to degrade or injure one who is alive, or to bring him into contempt, hatred or ridicule, or which accuses him of any crime punishable by law, or of any act odious and disgraceful to society." In 2 Bishop on Crim. Law, section 907, the offense is defined in these words: "The offense

of libel is founded on the doctrine of attempt. It is any representation in writing, or by pictures, effigies, or the like, calculated to create disturbances of the peace, to corrupt the public morals, or to lead to any act which, when done, is indictable.'' The publication in question certainly tended to bring Pearce into contempt and ridicule. It was manifestly calculated to create a disturbance of the public peace. The article speaks of the plunderers of the county. It speaks of Pearce as the holder of many offices, who has been industriously at work for four years correcting unsatisfactory entries and making new ones, supplying missing vouchers, and putting everything in apple-pie order for investigation. It charges that he will elucidate, explain, modify, or magnify the numerous entries and vouchers which are to be submitted. If such charges are not calculated to bring an official into contempt, it is hard to understand what would.

3. Judicial proceedings are privileged. The testimony of a witness even in a preliminary examination was held privileged in Beiser v. Scripps McRae Publishing Co., 113 Ky. 383, 24 Ky. Law Rep. 259, 68 S. W. 457, on the ground that, where the law imposes a duty upon a citizen, he cannot be held responsible in damages as for slander or libel for the testimony that he gives. Upon the same principle, if the witness testifies before the grand jury, his statements would be privileged. The law protects testimony given before the grand jury by declaring that it shall not be divulged. But Duncan did not testify before the grand jury. Had he testified before the grand jury, nobody could have known what he said but the grand jurors or the Commonwealth attorney, and they were required to keep it secret. When, for the

purpose of publicity, he published his communication in a daily newspaper, he was discharging no duty which the law imposed upon him so far as the grand jury was concerned; and the fact that he addressed his communication to the members of the grand jury altered in no way its legal character. If the communication would be libelous when addressed to the public at large, it is equally libelous when addressed to persons who are styled grand jurors. The law does not tolerate this manner of bringing matters to the attention of the grand jury, and he who libels another cannot escape responsibility for his act by addressing his publication to the grand jury or to some public official. Were this the rule, prosecutions for libel could always be defeated. See Shields v. Commonwealth, 55 S. W. 881, 21 Ky. Law Rep. 1588.

4. We cannot see that the indictment lacks certainty. It charges that the defendant published "a certain false, scandalous and malicious article or publication containing words and sentences of and concerning L. E. Pearce, as follows," and then the entire article is copied. This is a charge that the words and sentences contained in the article were published of and concerning L. E. Pearce. If it shall turn out on the trial that certain parts of the article do not refer to Pearce, the court will regulate the matter by its instructions to the jury. If the Commonwealth does not prove on the trial that all the statements were made of and concerning Pearce, but does prove that some of them were, and the statements so proved are libelous, the court will, by its instructions, submit the case to the jury on these matters.

Judgment reversed, and cause remanded to the circuit court, with directions to overrule the demurrer to the indictment.