CASE 71.—ACTION BY WILLIAM DIXON AGAINST H. C. CHAPPELL.— March 4, 1909.

# Dixon v. Chappell

Appeal from Leslie Circuit Court.

L. D. LEWIS, CIRCUIT JUDGE.

From a judgment of dismissal on demurrer. Plaintiff appeals.—Reversed.

Libel and Slander—Libelous Publication—"Graft."—A newspaper article, charging that justice has been outdone, that it is a matter of self-exposure, self-ignorance, bad recollection, no bookkeeping, or downright graft on the part of the county officials, that, when things go wrong, the county judge has a very bad memory, and his graft continues to extract money from the taxpayers' pockets, touches the county judge in his office, and charges him with graft, and is libelous per se; the word "graft" meaning the fraudulent obtaining of public money unlawfully by the corruption of public officers.

CLEON K. CALVERT and J. G. BIGLEY for appellant.

Dixon v. Chappell.

POINTS DISCUSSED AND AUTHORITIES CITED.

(a.) Libel and Slander—Words Actionable per se.—The article and words published by the defendant, of and concerning the plaintiff, and complained about in this action, are libelous per se. 2 Roberson Criminal Law 586; 2 Bishop Criminal Law Sec. 907; Pennsylvania Iron Works Co. v. Henry Voght Machine Co., 96 S. W. 551 et seq.; Commonwealth v. Duncan, 104 S. W. 998 et seq.; Tillson v. Robbins, 68 Me. 295; 28 Am. Rep. 50; Moore v. Francis et al., 121 N. Y. 199; 23 N. E. 1127; 8 L. R. A. 214; 18 Am. St. Rep. 810; Louisville Press Co. v. Tennelly, 105 Ky. 368; Price v. Conway, 134 Pa. 340; 8 L. R. A. 193; Keemle v. Sass, 12 Mo. 499; Stewart v. Swift Specific Co., 76 Ga. 280; Starkie, Slander and Libel, 2 Eng. Ed. 166-168; Underhill, Torts, (Moak), 199; Townsend, Slander and Libel, Sec. 21; Cropp v. Tilney, 3 Salkeld 226; Wickham v. Hunt, Montreal L. Rep. 6 Super. Ct. 28; Robbins v. Treadway, 2 J. J. Mar. 540; 19 Am. Dec. 152.

(b.) Libel and Slander—Special Damage.—The lower court erred in sustaining this demurred because the plaintiff alleged special damage.   (No authorities cited.)

J. M. BICKNELL for appellee.

JAS. H. JEFFRIES and T. G. LEWIS of counsel.

1. In Manire v. Hubbard, 22 Ky. Law Rep. 1753, is the following: "To sustain an action for libel the plaintiff must allege special damages, or the nature of the charge must be such that the court can legally presume that he has been degraded in the estimation of the public, or has suffered other loss, either in his property, character or business, in his domestic and social relations in consequence of the publication." On a point of law so well settled, we deem it useless to make further citations, to show that, if said article is not libelous per se, special damages should be alleged, nor do we apprehend that the court will consider the allegation of damage in the petition to be an allegation of special damage.

2. Finally, we do not think that vague suspicion, founded on expressions so indefinite that the reader must enquire what specific thing has been done, can be considered as libel, especially when those expressions are statements of opinion rather than statements of fact.   If such should be the law, then there could be no criticism of wrong official conduct.

OPINION OF THE COURT BY JUDGE HOBSON—Reversed.

William Dixon is the county judge of Leslie county. H. C. Chappell is the publisher of a newspaper at Hyden, Ky., called "Thousandsticks," which circulates in the county. In that paper on October 22, 1908, Chappell printed the following article: "Right

is Our Motto. There has been quite an inquiry by the taxpayers of Leslie county to the editor of Thousandsticks as to whether he had abandoned his fight for good government on the part of our county officials. We can say that we have not and never will. Defeat does not spell anything to us, when justice has been outdone, overruled by the sleight of hand. It is a matter of self-exposure and self-ignorance, bad recollection, no bookkeeping, or it is downright graft on the part of our county officers. There is no better way of doing anything than a plain show down, which has been evaded by the fiscal court. When things go wrong the county judge has a very bad recollection, and his graft continues to extract the money from the taxpayers' pockets. In Harlan county the taxpayer is assessed only 25 cents on the $100.00 for his county levy. That 25 cents on the $100.00 pays the officers' salaries, paupers and other county claims and still has enough left to lay up a road and bridge fund, and out of that fund they have much better roads than we have, and have some ten or twelve bridges in the county. We only refer to this as an illustration to let the taxpayers know that their money has been mysteriously squandered in this county. Evidently some one has been getting fat jobs. Now, we are going to push this fight for a better condition of our financial affairs and demand of our public officials to show their record so the taxpayers may know where their money has gone. If any taxpayer thinks he is an interested party, we would be glad to hear from him." Dixon thereupon brought this suit against Chappell, charging that he had made the publication with express malice, and to his damage in the sum of $5,000. The circuit court sustained a general demurrer to the petition on the ground that the

article is not libelous per se, and that no special dam·
age was alleged. His petition having been dismissed,
the plaintiff appeals.

The only question arising on the appeal is whether
the article is libelous per se. In Newell on Libel and
Slander the rule is thus stated: ''Defamatory words
falsely spoken of a person, which impute to the party
unfitness to perform the duties of an office, or em-
ployment of profit, or the want of integrity in the
discharge of the duties of such an office or employ-
ment, are actionable in themselves without proof of
special damages.'' The same principle is thus stated
in Townsend on Slander and Libel, Sec. 196: ''As
regards language concerning one in an office, the
same general principles apply as to language con-
cerning one in trade. Language concerning one in
office which imputes to him a want of integrity or
misfeasance in his office, or a want of capacity gen-
erally to fulfill the duties of his office, or which is
calculated to diminish public confidence in him, or
charges him with a breach of some public trust, is
actionable. But as in the case of one in trade, the
language, to be actionable, must touch him in his of-
fice.'' To same effect, see 18 Am. & Eng. Encyc. of
Law, 954; 25 Cyc. 346. In Robbins v. Treadway, 25
Ky. 540, 19 Am. Dec. 152, the charge was that the
judge lacked capacity as a judge, and that he had
abandoned the common principles of truth. Holding
this actionable, the court said: ''Anything which as-
sails the integrity or capacity of a judge is action-
able.'' In Commonwealth v. Duncan (Ky.) 104 S.
W. 997, 31 R. 1277, which was a prosecution for libel-
ing L. F. Pierce, the clerk of the quarterly court of
Fayette county, the article charged that the county
had been plundered by the county officials, and, after

referring to the county judge, used this language in regard to the quarterly court clerk: ''Did he promise that his 'Fidus Achates'—that ubiquitous county official who is sometimes 'County Auditor,' sometimes 'County Bookkeeper,'·sometimes 'Clerk of the Quarterly Court'and'Instructor for the New City Auditor' —would accompany the books and elucidate, explain, modify or magnify the numerous entries and vouchers which are to be submitted? Did he explain that this holder of many offices had been industriously at work for four years bringing order out of chaos, correcting unsatisfactory entries and making new ones, supplying missing vouchers and putting everything in 'apple pie' order for investigation?'' Holding this libelous, the court said: ''The article speaks of the plunderers of the county. It speaks of Pierce as the holder of many offices, who has been industriously at work for four years correcting unsatisfactory entries and making new ones, supplying missing vouchers, and putting everything in apple pie order for investigation. It charges that he will elucidate, explain, modify or magnify the numerous entries and vouchers which are to be submitted. If such charges are not calculated to bring an official into contempt, it is hard to understand what would.'' See, also, Penn Iron Works v. Henry Voght Machine Company (Ky.) 96, S. W. 551, 29 R. 861, 8 L. R. A. (N. S.) 1023.

In the article before us it is charged: That justice has been outdone, overruled by sleight of hand; that it is a matter of self-exposure, self-ignorance, bad recollection, no bookkeeping, or downright graft on the part of the county officials; that when things go wrong the county judge has a very bad memory, and his graft continues to extract money from the tax-

payers' pockets. The natural meaning of this is that the misuse of the county money is due to ignorance, bad recollection, no bookkeeping, or downright graft on the part of the county officials, and that the county judge has both a bad recollection and by graft continues to extract money from the taxpayers' pockets. The word "graft" has a well-defined popular meaning at this time. It means the fraudulent obtaining of public money unlawfully by the corruption of public officers. It is constantly so used in the daily press, and is thus defined in Clarkson's American Dictionary: "The act of any one, especially an official or public employe, by which he procures money surreptitiously by virtue of his office or position." "Grafter" is thus defined: "A dishonest official." The charge touches the county judge in his office. To charge an official with graft is to charge him with want of integrity. The article in question, if true, would necessarily destroy the respect of the people of Leslie county for the county judge. Its necessary tendency was to degrade him in public estimation, for no one could regard him as a capable and upright official who believed the statements of this article to be true. The publication was therefore actionable per se, and the circuit court erred in sustaining the demurrer to the petition.

Judgment reversed.