### Cole v. Commonwealth.

### Warley v. Same.

### Louisville News v. Same.

(Decided December 16, 1927.)

### Appeals from Hopkins Circuit Court.

1.  Libel and Slander.—Libel is any false and malicious publication which tends to blacken the memory of one who is dead or to degrade or injure one who is alive, or bring him in contempt, hatred,

or ridicule, or which accuses him of any crime punishable by law, or of any act odious or disgraceful to society.

2. Libel and Slander.—Language concerning one in office, which imputes to him want of integrity or misfeasance in his office or want of capacity generally to fulfill duties, or which is calculated to diminish public confidence in him as an officer or charge him with breach of some public trust, is actionable.

3. Libel and Slander.—Comment on, and criticism of, acts and conduct of public men, are privileged if fair and reasonable and made in good faith, yet the right to criticize does not embrace right to make false statements of fact or draw inferences or express opinions not based on truth.

4. Libel and Slander.—A false charge to effect that a judge abandons his office and takes up role of prosecutor is libelous, in that it necessarily charges that he is guilty of misconduct, since office of judge and office of prosecutor are wholly incompatible.

5. Libel and Slander.—False allegation that persons accused of crime were to be swiftly convicted and hanged, no matter what the circumstances were, amounts to a charge of gross misconduct on part of judge, and is therefore libelous.

6. Libel and Slander.—False charge that a judge was conducting a farcical trial, and that trial was mob law, and that judge had not given a thought to presumption of innocence that law throws about accused, held libelous as charging want of integrity.

7. Libel and Slander.—Where words used in newspaper articles relative to misconduct of judge in conducting trial referred to judge, and were so understood by others, it is not necessary that he be mentioned in article by name.

8. Libel and Slander.—Newspaper publications, charging that judge was busying himself with certain prosecution and that accused were to be swiftly convicted and hanged, and charging other misconduct, held not privileged under Bill of Rights, sec. 1, subsec. 6.

ALLEN P. DODD for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Affirming.

These appeals, which are prosecuted from judgments convicting appellants of libel, and fixing their punishment at a fine of $250 each, will be considered in one opinion.

The insufficiency of the indictments is the only ground urged for a reversal.

Omitting the caption, the Cole indictment is as follows:

"The grand jurors of the county of Hopkins, in the name and by the authority of the commonwealth

of Kentucky, accuse I. Willis Cole of the offense of libel committed in manner and form as follows, to wit: The said I. Willis Cole, in the said county of Hopkins, on the 17th day of April, 1926, and before the finding of this indictment, and within one year next before the finding of this indictment, in the county aforesaid, did unlawfully, willfully, maliciously, and falsely print and publish and cause to be published in the Louisville Leader, a newspaper published in Louisville, Ky., and having a general circulation in the county of Hopkins, of and concerning the Honorable Ruby Laffoon, who was then and at the time the duly and legally elected, qualified, and acting judge of the Hopkins circuit court, and a resident of Madisonville, Hopkins county, Ky., a certain article or publication containing false and malicious words and sentences, of and concerning the said Ruby Laffoon, judge as aforesaid, as follows, to wit:

" 'The judge, who under the law simply acts as referee in a case, has in this instance busied himself with the prosecution and citizens, a special court has been called, a bigger army than that used at Lexington at a greater expense is to be on duty, and it is the consensus of opinion that Hollis, Fleming, and Bard, and also Blanton, are to be so swiftly convicted and hanged as to make the Lexington affair look like a penny with a hole in it. It makes no difference whether they all confess or not or what the circumstances are.'

"A copy of the entire article is filed herewith as part hereof, marked 'Exhibit A,' for identification.

"That in the said false and malicious words and sentences so written, composed, and published as aforesaid, the said I. Willis Cole unlawfully, willfully, maliciously, and falsely imputed dishonesty, misconduct in office, corruption in the discharge of his duties, and unfitness for the performance of the same to the said Ruby Laffoon, judge of the Fourth judicial district of Kentucky, in that the said Ruby Laffoon had assisted the commonwealth attorneys and other citizens in securing evidence to convict Columbus Hollis, Bunyan Fleming, and Nathan Bard, three negroes, who in his court were charged with rape, and had called soldiers to be then and there

present to aid and assist the said Ruby Laffoon as such judge, in the conviction and execution of the aforesaid negroes, and thereby enable the said judge to secure an unlawfully swift conviction and subsequent hanging of the aforesaid three negroes, without any regard, legal or otherwise, to the said Hollis, Fleming, and Bard's rights as citizens of Hopkins county and the state of Kentucky, in his court in Hopkins county, and that he, the said judge, would willfully and maliciously as judge, while trying the said negroes, knowingly and prejudicially refuse to give either of them a fair and impartial trial on the charge against them, but that he, the said judge, would unlawfully assist, aid, and encourage the prosecution in bringing about the unlawful conviction of the aforesaid three negroes upon the charge as made against them; that in said article the said I. Willis Cole falsely charged the aforesaid judge with dishonesty and lack of integrity as a judge, with unlawful and malicious conduct before and during the trial in his court, of the aforesaid three negroes all of which was done for the malicious purpose and intent to injure his good name and fame as a public officer and as a citizen of the commonwealth, and to expose him to public suspicion, hatred, contempt and loss of reputation, against the peace and dignity of the commonwealth of Kentucky.''

Exhibit A filed with the indictment, is as follows.

''The Louisville Leader.

''Madisonville Sets Stage for Speedy Trial and Hanging of Negroes.

''Justice will Not Slip as in the Merchant Case.

''Madisonville, Ky., April 15. Outdone by Mississippi, Georgia, and other states south, when it comes to making negroes charged with certain offenses pay the extreme penalty, outside of the courts, Kentucky bids to outdistance them all in the double standard of laws, the mockery of it, when the negro is involved, through speedy trials which fall little short of 'legalized lynching,' at a very high cost, and Madisonville is about to outdo Lexington in the effort to put the old state over.

"About 70 days ago in Lexington, Ky., Ed Harris, who became enraged with his partner in the bootlegging business, killed him and his two children, and later, charged with wounding and assaulting the wife, was found guilty within fifteen minutes, paying the penalty by hanging within thirty days after he was convicted by the Fayette county white jury. Thirty days after he was hanged, Chas. Merchant, a white man, raped an 11 year old colored school girl and then marched her through the streets without a piece on her body. His guilt was not questioned, but within the same fifteen minutes a white jury in the same city and county and before the same judge declared him insane.

"In Madisonville three negroes, Columbus Hollis, Bunyan Fleming, and Nathan Bard, have been arrested and charged with assaulting a young white woman on Wednesday night, April 7. A fourth negro, Joe Blanton, whose photograph was found in a white woman's pocket book, turning public light on an association between the races that has been going on for some time, is also being held in an effort to connect him in some way with the assault that his neck may also be speedily broken. Blanton and Hollis are held in the Eddyville penitentiary, having been moved from jails of this section for safe-keeping. Fleming and Bard were first moved to Louisville but later taken to the penitentiary at Frankfort for safe-keeping, it is said. The opinion is, however, that they were safe in Louisville, but were moved for fear of receiving some of the legal help due them even if guilty. It is reported that the men when seen on the train which carried them into Louisville early last Monday were beaten and bloody over their heads and faces. Hollis is said to have confessed to the crime and implicated Fleming and Bard, who strenuously deny guilt. The judge, who under the law simply acts as referee in a case, has in this instance busied himself with the prosecution and citizens, a special court has been called, a bigger army than that used at Lexington at a greater expense is to be on duty, and it is the consensus of opinion that Hollis, Fleming, and Bard, and also Blanton, are to be so swiftly convicted and hanged as to make the Lexington affair look like a penny with a hole in it. It makes

no difference whether they all confess or not or what the circumstances are.

"The strange thing about Harris' case was that he killed three persons and then turned and committed assault. Taking for granted he was guilty of such a thing, and something was wrong with his mind, he had no chance to prove it. It is known here that there has been frequent association of at least three of these negroes with white women, and yet they needed to assault others. If they are guilty, they cannot possibly be insane in Kentucky, and no such plea will mean anything to them. Committing them to an insane asylum, as was Merchant, who raped the colored girl, and attempted the second, would be out of the question. Negroes here are quiet, while the white people are waiting patiently for the neck-breaking party. The white women associates of the colored men are being held. They will at least be given the gate out of the community. Other negro men who may be guilty of like association will be given hasty get-out orders. To make the law fair, negro women and white men companions might also be given rush-out orders. It would be hard to know where to start in Kentucky and the South, however. Exhibit A."

Omitting the caption, the Warley indictment is as follows:

"The grand jurors of the county of Hopkins, in the name and by the authority of the commonwealth of Kentucky, accused William Warley of the offense of libel committed in manner and form as follows, to wit: The said William Warley in the said county of Hopkins on the 17th day of April, 1926, and before the finding of this indictment, and within one year next before the finding of this indictment, in the county aforesaid, did unlawfully willfully, maliciously, and falsely print and publish, and cause to be published in the Louisville News, a newspaper published in Louisville, Ky., and having a general circulation in the county of Hopkins, of and concerning the Honorable Ruby Laffoon, who was then and at the time the duly and legally elected, qualified, and acting judge of the Hopkins circuit court, and a resident of Madisonville, Hopkins county, Ky., a certain

article or publication containing false and malicious words and sentences, of and concerning the said Ruby Laffoon, judge as aforesaid, as follows to wit:

" 'Legal Lynching Coming?

" 'Madisonville Men Apparently Being Rushed to the Gallows by Farcical Trial.

" 'Up-to-Date No Guilt Proven—Guilty or Not, a Fair and Deliberate Trial Due Them.

" 'Is Kentucky to have another "legal" lynching? That is the question on the lips of every negro in Kentucky.

" 'The word is sent out that on April 23 these men will be indicted, tried, convicted, and sentenced to death. And 30 days after they will be hanged.

" 'What is this but mob law? No presumption is made one or all may be innocent. The presumption that a man is innocent until proven guilty has never been given a thought.

" 'Little or no identification has been made. Three negroes arrested, that is enough! Why railroad men to death without a fair and deliberate trial?'

"A copy of the entire article is filed herewith as part hereof, marked 'Exhibit A' for identification.

"That in the said false and malicious words and sentences so written, composed and published, as aforesaid, the said William Warley unlawfully, willfully, maliciously, and falsely imputed dishonesty, misconduct in office, corruption in the discharge of his duties, and unfitness for the performance of the same to the said Ruby Laffoon, judge of the Fourth judicial district of Kentucky, in that the said Ruby Laffoon was apparently rushing to the gallows three negroes charged with rape, by a farcical trial in his court in Hopkins county, and that he, the said judge, would willfully and maliciously, as a judge, while trying said negroes, knowingly and prejudiciously refuse to give either of them a fair and impartial trial on the said charge against them; that in said article the said William Warley falsely charged the aforesaid judge with dishonesty and lack of integrity as a judge, all of which was done for the malicious purpose and intent to injure his good name and fame

as a public officer and as a citizen of the common-
wealth, and to expose him to public suspicion, hatred,
contempt, and loss of reputation, against the peace
and dignity of the commonwealth of Kentucky.''

Exhibit A, filed with the indictment, is as follows:

"The Louisville News.

"Legal Lynching Coming?

"Madisonville Men Apparently Rushed to the Gal-
lows by Farcical Trial.

"Up-To-Date No Guilt Proven—Guilty or Not, a
Fair and Deliberate Trial Due Them.

"Is Kentucky to have another 'legal' lynching?
That is the question on the lips of every negro in
Kentucky.

"A few weeks ago Ed Harris was rushed to the
gallows after a seventeen-minute trial on the alleged
charge of rape. (Tried in seventeen minutes by
twelve of his 'peers' and sentenced to death, while it
took the inanimate rope eighteen minutes to choke
him to death.) He was charged with killing a man,
two children, and then raping a woman. The killing
of the man was proven, the rape of the woman was
never convincingly proven. He 'confessed' to that.

"Charles Merchant, white, was charged with
rape of an 11 year old colored girl. He never 'con-
fessed,' but it was proven without a doubt. Merchant
was declared insane. Harris was black and alone;
his own people being afraid to express a doubt. Mer-
chant was white, with wealthy parents; his victim
was black. No denial of the crime was made. He
was just crazy. So This Is Justice!

"Before that rotten stench gets out of the nos-
trils along comes a series of alleged outrages on
women in Madisonville. White women, with male
company, are attacked. Bloodhounds and officers
fail to trail or trace the guilty parties.

"Finally a white man finds in the purse of a
white woman roomer a picture of a negro and letters
from him showing past association. He exposes the
woman, officers used the picture as a clue and arrest
three negroes.

"|One 'confesses' and names two others.

"The word is sent out that on April 23 these men will be indicted, tried, convicted, and sentenced to death. And 30 days after they will be hanged.

"What is this but mob law? No presumption is made one or all may be innocent. The presumption that a man is innocent until proven guilty has never been given a thought.

"Little or no identification has been made. Three negroes arrested, that is enough!

"A white business man of Louisville, who has interests in Madisonville, is quoted to the News as having said conditions in that town are rotten. He alleges white men openly consort with colored women, and, whereas black men are not so open with white women, they do mingle, and white people close their eyes to conditions.

"Since the alleged attacks on the women, this gentleman says, the better element have declared to 'purify Madisonville' and drive all that class of people away. So well and so good. But why railroad men to death without fair and deliberate trial? How do they know these men are guilty, and, if guilty, are not as crazy as Merchant? Kentucky already stands in the eyes of the thoughtful world in a very poor light.

"If she stages another 'legal' lynching, Kentucky will sink to the level of Mississippi at its lowest."

The Louisville News indictment is the same as the Warley indictment, with the exception that it is charged with the actual publication of the matter that Warley is charged with causing to be published.

Libel is an offense at common law, and is defined to be any false and malicious publication, which tends to blacken the memory of one who is dead, or to degrade or injure one who is alive, or bring him in contempt, hatred, or ridicule, or which accuses him of any crime punishable by law, or of any act odious or disgraceful to society. Commonwealth v. Duncan, 127 Ky. 47, 104 S. W. 997, 31 Ky. Law Rep. 1277. Language concerning one in office which imputes to him a want of integrity or misfeasance in his office, or a want of capacity generally to fulfill the duties of his office, or which is calculated to diminish

public confidence in him as an officer, or charges him with a breach of some public trust, is actionable. Townsend on Slander and Libel, section 196; Dixon v. Chappell, 133 Ky. 663, 118 S. W. 929. "Anything which assails the integrity or capacity of a judge, is actionable." Robbins v. Treadway, 25 Ky. (2 J. J. Marsh.) 540, 19 Am. Dec. 152. It is true that the interests of society and the efficiency of the public service require that the acts of all officers may be fairly criticized by the press and the public. It is likewise true that such comment may be caustic or severe if the facts warrant it; hence the ruling that comment on, and criticism of, the acts and conduct of public men are privileged, if fair and reasonable and made in good faith. Under this rule it is not libelous to express the opinion that a judge erred in judgment. Robbins v. Treadway, supra. It must not be overlooked, however, that the right to criticize does not embrace the right to make false statements of fact, or to draw inferences or express opinions not based on the truth. Democrat Publishing Co. v. Harvey, 181 Ky. 730, 205 S. W. 908; Vance v. Louisville Courier-Journal, 95 Ky. 41, 23 S. W. 591, 15 Ky. Law Rep. 412. Not only so, but the right to comment or criticize does not extend to or justify allegations of a fact of a defamatory character. Sweet v. Post Publishing Co., 215 Mass. 450, 102 N. E. 660, 47 L. R. A. (N. S.) 240, Ann. Cas. 1914D, 533. Hence, if the publication is not a comment or criticism, but a statement of fact, the rules to be applied are those applicable to any other case of defamation. Van Lonkhuyzen v. Daily News Co., 203 Mich. 570, 170 N. W. 93.

Analyzing the language used in the Cole case, we find that it makes the following charges:

(1) The judge is busying himself with the prosecution.

(2) Hollis, Fleming, Bard, and Blanton are to be swiftly convicted and hanged, no matter what the circumstances are. Under our system of jurisprudence, the judge must hold the scales of justice equally balanced between the commonwealth and the accused. Therefore the office of judge and the office of prosecutor are wholly incompatible, and, if the judge abandons the office of a judge and takes up the role of prosecutor, he is necessarily guilty of misconduct as a judge. Hence a false charge to that effect is libelous. While under our system

the guilt of the accused is for the jury, where the evidence is conflicting, the judge has the power to refuse to submit the case to the jury where there is no evidence of guilt, or to set aside a verdict of guilty if flagrantly against the evidence. In view of this power no judge worthy of the name will permit a conviction to stand where there is no evidence of guilt. It follows that a false allegation that the accused were to be swiftly convicted and hanged, no matter what the circumstances are, amounts to a charge of gross misconduct on the part of the judge, and is therefore libelous.

Analyzing the language in the Warley and Louisville News cases, it is clear that, although partly put in the form of questions, a direct charge was intended. In the first place, there is the charge that the Madisonville men apparently were being rushed to the gallows by a farcical trial. There was in substance the further charge that Kentucky was to have another legal lynching. There was also the charge that this was mob law. There was the further charge that the presumption that a man is innocent until proven guilty had never been given a thought. Charging that a judge is conducting a farcical trial, or that the trial is mob law, or that he had not given a thought to the presumption of innocence that the law throws about the accused, is certainly a charge of want of integrity on the part of the judge, and it is therefore libelous.

But the point is made that the publications do not refer to Judge Laffoon. It was not necessary that he be mentioned by name, where it was alleged and shown that the words used referred to him and were so understood by others. Axton Fisher Tobacco Company v. Evening Post, 169 Ky. 64, 183 S. W. 269, L. R. A. 1916E, 667, Ann. Cas. 1918B, 560; 36 C. J. 1158. In the conduct of particular trials, courts are not impersonal. There can be no trial without a judge. The charge is not a general one concerning the actions of courts. The language employed in each case has reference to a particular trial. It is admitted that the trial was to be conducted by Judge Laffoon. The charge that the judge was busying himself with the prosecution is a direct charge against the judge himself. The time of the trial of the Madisonville men was within the control of the judge. The only person that could rush them in the trial was the judge. He alone could railroad them to death without a fair and deliberate

trial. We are therefore forced to the conclusion that the language was a direct attack and reflection on the judge conducting the trial, who, as stated above, was Judge Laffoon.

There is no merit in the contention that the publication is privileged under section 1, subsec. 6, Bill of Rights, which provides:

> "All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned: . . .
>
> "6. The right of assembling together in a peaceable manner for their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

Neither of the publications in question was a petition, address, or remonstrance, within the foregoing provision. It was not an application to those invested with the power of government for redress of grievances or other proper purposes. It was simply a newspaper article addressed to no one and intended to be read by the public, and, if by the judge, not as a judge but as a member of the public. The publications, as well as their falsity, being admitted, there can be no doubt that appellants were guilty of criminal libel.

Judgment affirmed.