## Commercial Tribune Publishing Company v. Haines.

(Decided February 1, 1929.)

ROUSE & PRICE and POGUE, HOFFHEIMER & POGUE for appellant.

CHARLTON B. THOMPSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, the Commercial Tribune Publishing Company, is a corporation with its principal office in Cincinnati, Ohio, and at the times involved in this litigation, and prior thereto, it published and issued a daily newspaper called "The Commercial Tribune," which circulated in Covington, Newport, and other contiguous Kentucky territory to Cincinnati, Ohio. In the issue of July 30, 1926, there was published a communication from Covington, Ky., prepared by a correspondent who subscribed himself as "A Kentucky Observer," and who in reality was the employed reporter for the paper in the city of Covington. The article so published and circulated was in these words:

"A Protest. To the Editor of The Commercial Tribune: Year after year with the same regularity as the income tax come stories about the tangled financial embarrassments of the City of Covington. Each story means that the taxpayer will have to dig down deeper in his jeans and meet the deficit. But this becomes monotonous and irksome. Probably a more skillful handling of the city's reins and a careful wielding of the pruning knife in weeding out 'deadheads' holding soft political jobs in the city's employ might remedy conditions.

"While they are only small fish in a large pond, two sophisticated individuals who ride shiny red motorcycles with Napoleonic mien and seem self-impressed with their importance are glaring ex-

 amples of uselessness from the standpoint of public beneficiency in the eyes of at least one struggling human. They seem to have a strangely distorted idea of duty. Almost any evening, when the atmospheric conditions are such that they feel assured their classic features will not be marred, they can be found parked at the curb or along the roadside chatting earnestly with believing maidens. What information they possibly can obtain from these mere children about law violation must be left to the imagination. Covington should start housecleaning with the motorcycle cops and work upward to unqualified men holding bigger positions.''

At that time appellee and plaintiff below, Harry Haines, and another, were the only employed and acting motorcycle policemen for the city of Covington, and rightfully conceiving that the publication referred to him, plaintiff filed this ordinary action in the Kenton circuit court against defendant to recover damages for what he alleged was a libelous publication defaming him as an officer by charging him with neglect of official duties and as being disqualified to perform them to such an extent that he needed to be weeded out of office with the city's pruning knife, upon the ground that he was a ''deadhead'' and unqualified to fill the office. A demurrer filed to the petition was properly overruled, and the answer, after denying malice, the falsity of the publication, and the damages, relied on special privilege and the truth of the publication. Appropriate pleadings made the issues, and, under the instructions given by the court, the jury returned a verdict for plaintiff in the sum of $800, upon which judgment was rendered, and defendant's motion for a new trial was overruled, and it prosecuted this appeal.

As we interpret the argument of learned counsel for defendant, their chief criticisms of the trial are: (1) Error of the court in overruling defendant's demurrer to the petition upon the ground that the publication was not libelous per se; (2) error in the admission of evidence offered by plaintiff over defendant's objections and exceptions; (3) refusal of the court to sustain defendant's motion for a peremptory instruction in its favor; and (4) error of the court in assuming and determining, in instruction No. 1 given to the jury, that the complained of publication imputed to plaintiff, as one of the motorcycle

policemen in the city of Covington, neglect of official duty by the habitual parking of his motorcycle in the manner and for the purpose stated in the libel, and which criticisms we will dispose of in the order named.

1. It is a fundamental principle in the law of libel and slander that the defamatory matter complained of should be construed as a whole, and that the language employed therein should receive its common and ordinary acceptation in the light of the conditions and circumstances under which it was published. Also, that defamatory matter, printed or spoken, charging an officer with neglect of his official duties, so as to disqualify him for their punctual performance and to render him unfit to discharge them, is actionable per se, and it is especially so when the defamation is printed and circulated, and the same principle applies where the language is defamatory of one in his profession. Baker v. Clark, 186 Ky. 815, 218 S. W. 280; Dixon v. Chappell, 133 Ky. 663, 118 S. W. 929; Evening Post Co. v. Richardson, 113 Ky. 641, 68 S. W. 665, 24 Ky. Law Rep. 456; Robbins v. Treadway, 2 J. J. Marsh. 540, 19 Am. Dec. 152; Truth Publishing Co. v. Reed, 13 Ky. Law Rep. 323; Thompson v. Bridges, 209 Ky. 710, 273 S. W. 529; and 36 C. J. 1180, sec. 69. Many other domestic cases could be added to the list, but it would unnecessarily lengthen this opinion, since the proposition is a fundamental one in the law of libel and slander and we do not understand learned counsel to dispute it. In at least some of the cited cases supra, as well as that of Democrat Publishing Co. v. Harvey, 181 Ky. 730, 205 S. W. 908, it was held, in accord with the equally well-established rule upon the subject, that in such cases of actionable words per se if false malice will be presumed, but which the defendant may overcome with his proof, or by showing that the publication was under a qualified privilege, and, if done, then the burden of establishing malice is cast upon plaintiff, notwithstanding the publication on its face is per se libelous. The same authorities further hold that plaintiff will discharge that burden by proving either express malice, or that the publication was false, from which latter fact implied malice will be presumed. See also as supporting the above conclusions the cases of Ray v. Shemwell, 186 Ky. 442, 217 S. W. 351, and Reid v. Sun Publishing Co., 158 Ky. 727, 166 S. W. 245. It was furthermore held in the Baker case and others therein referred to that where the language complained of is unambiguous "its construction is one

of law for the court'' and its meaning, as well as the intent of defendant in employing it, should not be submitted to the jury.

The publication in this case, according to the common and usual acceptation of the terms employed, accused plaintiff of neglecting his official duties in language that could not be misunderstood. It says: ''They (defendant and his companion as the only two motorcycle policemen in Covington) seem to have a strangely distorted idea of duty''; that they were, ''glaring examples of uselessness,'' and to such an extent that they were ''deadheads'' and needed weeding out, and because thereof ''Covington should start housecleaning with the motorcycle cops and work upward to unqualified men holding bigger positions''—all of which, in plain and unambiguous terms, charged plaintiff and his companion as such motorcycle policemen as being neglectful of their official duties and unqualified as well as were also others ''holding bigger positions.'' The court, therefore, did not err in overruling defendant's demurrer to the petition.

2. The evidence complained of under this criticism was that introduced by plaintiff to show that he was not only an efficient officer, but that he had punctually and assiduously performed his duties and had never been reprimanded by his superiors in office. The principal issue in the case was whether defendant was guilty of the derelictions preferred against him in the libelous article, and the evidence complained of bore directly on that issue. We are cited to no authority in support of this criticism, for the manifest reason, as we conceive it, that none could be found. The action involved his official character and reputation, and, necessarily, any fact that would establish his good character as an efficient officer would be relevant and provable. It was not sought by the testimony complained of to establish such facts by general reputation, but by witnesses who exercised a surveillance over plaintiff and a continuous watchfulness over his activities in the performance of his official duties, and we cannot believe that any court would hold that the testimony was incompetent.

3. Criticism (3) is bottomed upon the contention of counsel that defendant proved the truth of the complained of publication. There was proof that at the junction of two extensively traveled streets within the city plaintiff frequently parked his motorcycle at the

curb of one of them so forming the junction, and defendant's testimony rather preponderated to the effect that the parking was not only frequent but for a considerable period of time. Plaintiff, however, by himself and other proof, denied the length of time that his motorcycle remained so parked, though he admitted that he did park it at that place, but explained that it was necessary in the performance of his official duty to enable him to discover and arrest speeders of automobiles on those streets, or one of them that was extensively traveled. He explained that he could not detect and arrest speeders by riding along the street upon which it occurred, because they would discover him and slow down; that in order to avoid such obstruction to the performance of his duty he would stop his motorcycle and park it at some junction, a short distance back from the street watched by him for the purpose of making such discoveries. His explanation was and is reasonable, and it was denied by no witness in the case.

The argument in support of this criticism by learned counsel for defendant is based upon an erroneous interpretation of the libelous publication, in that he assumes that it consisted only of charging plaintiff with parking his motorcycle and talking to people, including young ladies, during the time that it remained so parked. But that theory is not well founded, since the gravamen of the cause of action furnished by the publication consisted not only in plaintiff parking his motorcycle, but that in doing so he was neglecting his official duty and was thereby whiling away his time in social engagements at the expense of the taxpayers of the city of Covington, and by reason of which he should be dispensed with as unfit and unqualified. Not one word or line of testimony was introduced or offered by defendant to disprove the necessity of the parking that plaintiff admitted and which he explained in his testimony. In order to prove the truth of the publication, it was incumbent upon defendant to prove both the parking of the motorcycle and that it was unnecessary in the performance of plaintiff's official duties. The latter element not being proven, but actually disproven by plaintiff in his testimony, the court did not err in refusing the peremptory instruction asked for.

4. This criticism has been hereinbefore dealt with by us in discussing and disposing of criticism (1) wherein we pointed out that in the Baker case, and others referred to therein, it is stated that where the language com-

plained of is unambiguous its construction is one of law for the court, and not to be determined by the jury under instructions from the court. It will be unnecessary to extend the discussion on that point, since in disposing of criticism (1) we pointed out the plain and unambiguous interpretation of the complained of publication.

The court in its instructions gave defendant the benefit of its plea of special privilege by casting the burden on plaintiff to prove malice which, as we have hereinbefore said, is the only effect to be given such privilege. Neither did the court err in allowing a recovery of punitive damages if the publication was both malicious and false. That question was so determined in the Ray case, supra, and in the one of McClintock v. McClure, 171 Ky. 714, 188 S. W. 867, Ann. Cas. 1918E, 96.

We will not discuss the testimony given by defendant's correspondent who wrote the publication complained of, and which plaintiff contends proves express malice so as to authorize vindictive damages, since the jury was authorized to and did find that the publication was false and consequently malicious, thereby authorizing the recovery of such damages, as is above shown. It is therefore unnecessary to review the testimony of the correspondent for the purpose of determining the truth or falsity of plaintiff's conclusions as to its malicious intent.

A painstaking reading of the record fails to reveal any error committed at the trial prejudicial to the defendant's substantial rights, and the judgment is affirmed.