RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0136P (6th Cir.)
File Name: 03a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VINCENT GAHAFER,
    *Plaintiff-Appellant,*

*v.*
    No. 02-5364

FORD MOTOR COMPANY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00319—Charles R. Simpson III, District Judge.

Argued: April 14, 2003

Decided and Filed: May 12, 2003

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Philip C. Kimball, Louisville, Kentucky, for Appellant. Allegra J. Lawrence, SUTHERLAND, ASBILL & BRENNAN, Atlanta, Georgia, for Appellee. **ON BRIEF:** Philip C. Kimball, Louisville, Kentucky, Samuel G. Hayward, ADAMS, HAYWARD & WELSH, Louisville, Kentucky, for Appellant. Allegra J. Lawrence, Lisa C. Jern, SUTHERLAND, ASBILL & BRENNAN, Atlanta, Georgia,

J. Michael Brown, WYATT, TARRANT & COMBS, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

SILER, Circuit Judge. Plaintiff Vincent Gahafer appeals the district court's judgment dismissing his defamation suit against Ford Motor Company ("Ford"). Gahafer contends that when viewed in the light most favorable to him, the allegations of his complaint state a claim for defamation *per se* under Kentucky law. We disagree and therefore **AFFIRM.**

## I. BACKGROUND

Gahafer is a mid-level manager at the Ford Kentucky Truck Plant located in Jefferson County, Kentucky. At the time of the incident giving rise to this lawsuit, Gahafer's direct supervisor was David Sabol. While working under Sabol's direction, Gahafer became involved with a project called "6-Sigma," a project not falling under Sabol's supervision nor directly within Gahafer's defined job duties. Infuriated that Gahafer's time and attention were being diverted on a side project, Sabol spouted the following profanity-laced tirade against Gahafer in the presence of two non-management Ford employees, thereby giving rise to this lawsuit:

> What the f--- do you think you are doing sitting at your desk when you should be at the Match Review . . . I have a big f------ problem with you going to Detroit to give the presentation . . . I don't give a f--- who told you to do what. You work for me, not the Plant Manager or Joe Bobnar . . . I have a real f------ problem with you working on 6-Sigma because while you are doing that your job is not getting done. I need you here to work as Dimensional Control Engineer and that's a full time job. I need you here seven days a week to work dimensional control and you don't have time to do anything else . . . You are not doing your f------ job. If you want to work

6-Sigma you could go somewhere else and work 6-Sigma and have someone else pay you . . . As long as you work for me you will do what I want done when I want it done . . . Get your f------ ass down to the Match fixture for the review and you better f------ be at the Control Plant Meeting because I am tired of doing your f------ job for you.

Based on these facts, Gahafer filed an action in state court, claiming that Sabol's criticism constituted defamation *per se* under Kentucky law because it "accused the Plaintiff of an inability or unfitness to perform his duties of employment with the Defendant." Ford removed the action to federal district court on grounds of diversity jurisdiction. The district court dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. On appeal, Gahafer does not challenge the pertinent facts or governing law of the case; instead, he contends that the district court erred in its interpretation of the facts and its application of the law.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Although we must accept all of the complaint's factual allegations as true, we "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (citations omitted). For purposes of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Kentucky, and must therefore apply the substantive law of that state. *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999).

## III. ANALYSIS

Under Kentucky law, defamation consists of four elements: (1) a defamatory statement; (2) about the plaintiff; (3) that is published; and (4) that causes injury to reputation. *Columbia*

*Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Slander, of course, involves the oral word. "Slander per se differs from ordinary slander in that the words themselves, absent any development of extrinsic facts or circumstances, are actionable." *Id.* at 274. Thus, to be slanderous *per se* the very words themselves must "taken in their natural meaning and in the sense in which they would be understood by those to whom addressed . . . tend to disgrace or degrade appellant, or to hold him up to public hatred, contempt, or ridicule, or to cause him to be shunned or avoided, or to directly prejudice or injure him in his business by imputing to him a want of fitness for engaging therein." *Towles v. Travelers Ins. Co.*, 137 S.W.2d 1110, 1111 (Ky. 1940) (citation omitted); *see also Baker v. Clark*, 218 S.W. 280, 283 (Ky. 1920) (explaining that words "are actionable per se if they directly tend to the prejudice or injury of any one in his profession, trade, or business") (internal quotation marks and citations omitted). Whether a particular communication is actionable *per se* is a question of law to be determined by the courts. *Columbia Sussex*, 627 S.W.2d at 274. For purposes of this analysis, the words must be "stripped of all innuendo, colloquium, and explanatory circumstances. . . ." *Sweeney & Co. v. Brown*, 60 S.W.2d 381, 384 (Ky. 1933).

In the instant case, Gahafer contends that Sabol's statements were actionable *per se* because they directly accused him of not doing his job, an accusation which for purposes of a Rule 12(b)(6) motion, we must assume was false. According to Gahafer, "[t]o say of an individual that he is not performing his regular job duties, for whatever reason (whether by choice or because of circumstances completely beyond his control), is equivalent to saying" that he is unfit or unqualified to do those duties. In support of this argument, Gahafer relies primarily on *Commercial Tribune Pub. Co. v. Haines*, 15 S.W.2d 306 (Ky. 1929).

In *Commercial Tribune*, the defendant newspaper published an article about the City of Covington's motorcycle police force, a patrolling unit that consisted of only two officers.

According to the article, the motorcycle officers, who suffered from a "Napoleonic mien," were the apotheosis of "uselessness" from the "standpoint of the public beneficiency [sic]." *Id.* at 307. Specifically, the article accused the officers of riding around on their "shiny red motorcycles" on days where the "atmospheric conditions" assured that their "classic features [would] not be marred," stopping only to chat "earnestly with believing maidens." *Id.* The article urged the city to "weed out" such "deadheads," who embraced such "a strangely distorted idea of duty." *Id.* The article concluded that "Covington should start housecleaning with the motorcycle cops and work upward to unqualified men holding bigger positions." *Id.*

Based on the foregoing, the Kentucky Court of Appeals, then Kentucky's highest court, held that "charging an officer with neglect of his official duties, so as to disqualify him for their punctual performance and to render him unfit to discharge them, is actionable per se." *Id.* The court continued, "it is especially so when the defamation is printed and circulated, and the same principle applies where the language is defamatory of one in his profession." *Id.* Applying this holding, the court explained that the cause of action was rooted not only in the plaintiff's "parking his motorcycle, but that in doing so he was neglecting his official duty and was thereby whiling away his time in social engagements at the expense of the taxpayers of the city of Covington, and by reason of which he should be dispensed with as unfit and unqualified." *Id.* at 308.

In the present case, as the district court correctly concluded, "stripped of the venomous epithets, Sabol's outburst [only] accuses Gahafer of spending time on a project known as 6-Sigma, apparently assigned to him by someone other than Sabol, and thereby [partially] neglecting his responsibilities as Dimensional Control Engineer under Sabol." Unlike the article in *Commercial Tribune*, which explicitly urged Covington to rid itself of its goldbrick motorcycle cops and move upwards to other "unqualified men holding bigger positions," nothing in Sabol's statements directly or indirectly

suggests that Gahafer is unfit, incompetent or otherwise unqualified to perform his job. Sabol's words did not attack Gahafer's skills, honesty, integrity or character. He did not accuse Gahafer of being useless and dispensable or a common parasite on Ford's financial resources. To the contrary, Sabol's poor choice of words reveals only that Gahafer's services and expertise were highly valued, as evidenced by the statement: "I need you here seven days a week to work dimension control and you don't have time to do anything else." Thus, Sabol's exclamations simply suggest frustration at Gahafer's time commitment to the 6-Sigma project; they do not cast doubt on his ability, fitness or qualification to effectively carry out his job duties.

In short, Sabol's angry words, which merely ordered Gahafer to discontinue working on the 6-Sigma project and to focus entirely on the dimension control job, were not the functional equivalent of an accusation of unfitness, incompetence or lack of qualification. The foulness of Sabol's words does not change the very substance and meaning of the message. No matter how sliced, the words at issue here did not "expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society."[1] *Digest Publ'g*

---

[1] Contrary to Gahafer's contention, it cannot be said that the district court applied the long-disfavored rule of construction of *in mitiori sensu. See Long v. Steele*, 4 Ky. (1 Bibb) 593, 593 (1809) (rejecting the rule of *in mitiori sensu* and explaining that "words are to be taken in that sense in which they would be understood by those who hear or read them"). In its analysis, the district court specifically recognized that it must examine Sabol's words in their "natural meaning" and "in the sense in which they would be understood." Sabol's statements were not subject to a dual interpretation, one innocent and the other injurious; rather, Sabol's statements, while offensive, were open to only one interpretation, namely, that Sabol was unwilling to share Gahafer's time and skills with other supervisors. Accordingly, the district court's analysis, which accorded Sabol's words their obvious import and meaning, was not a violation of the rule of *in mitiori sensu*.

*Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. 1955); *cf. Columbia Sussex*, 627 S.W.2d at 272-73 (general manager's words which conveyed strong assertion that either hotel manager or one of her employees was involved in the hotel robbery); *Smith v. Pure Oil Co.*, 128 S.W.2d 931, 932 (Ky. 1939) (a billboard accusing a prosecuting attorney of being a "fee grabber," thus imputing unlawful motives and unscrupulous and dishonest means of obtaining fees and compensation from innocent travelers); *Louisville Taxicab & Transfer Co. v. Ingle*, 17 S.W.2d 709, 710 (Ky. 1929) (a taxicab driver accused of being "discharged for drinking"); *Dixon v. Chappell*, 118 S.W. 929, 930 (Ky. 1909) (an article accusing a judge of being a "graft," a word that was commonly understood to mean "the fraudulent obtaining of public money unlawfully by the corruption of public officers"); *Fred v. Traylor*, 72 S.W. 768, 768 (Ky. 1903) (accusation that a miller "beat me out of $1,100 in three months," indicating the miller to be a dishonest tradesmen).

Accordingly, we hold that Sabol's outburst did not amount to slander *per se* under Kentucky law. Thus, the district court properly dismissed this case pursuant to Federal Rule of Civil Procedure 12(b)(6).

AFFIRMED.